**The MARYLAND CASUALTY COMPA-NY, a corporation, Plaintiff,**

v.

**Ronald TURNER et al., Defendants.**

**No. CIV–74–340–B.**

United States District Court,
W. D. Oklahoma.

Oct. 7, 1975.

George F. Short and John E. Wiggins, of Pierce, Couch, Hendrickson & Short, Oklahoma City, Okl., for Maryland Casualty Company.

David W. Edmonds, of Foliart, Mills & Niemeyer, Oklahoma City, Okl., for Ronald Turner and James J. O'Donnell, d/b/a Woodstock Drive-In Theatre.

Tom L. King, of Nance, King & Roberts, Oklahoma City, Okl., for Suzanne Elizabeth Orsi and Leo E. Orsi.

## STATEMENT

BOHANON, District Judge.

Plaintiff in its Complaint prays for judgment declaring the rights and obligations of the parties and that Maryland Casualty Company has no coverage under its policy No. 31–613175 to Ronald Turner and James J. O'Donnell on account of any claims arising out of the injuries sustained by Suzanne Elizabeth Orsi on August 5, 1973, and that plaintiff has no obligation on behalf of said Ronald Turner and James J. O'Donnell to defend, settle, or pay any judgment in Case No. CJ–74–290, District Court of Oklahoma County, Oklahoma.

The defendants, Ronald Turner and James J. O'Donnell d/b/a Woodstock Drive-in Theatre, answer saying that the defendant, Suzanne Elizabeth Orsi had not attended the so-called rock festival and concert, but came into the theater after the rock festival was over. Defendants affirmatively state that at the time of the accident the drive-in theater was showing the regularly featured motion picture. Said defendants deny that the Petition filed in State Court, which is attached to plaintiff's Complaint, alleges a joint venture relationship between these defendants, Ron-

ald Turner and James J. O'Donnell and the defendant, William Hayden Payne in Case No. CJ–74–290 in the District Court of Oklahoma County. These defendants further allege that their liability, if any, arising out of the accident involving Suzanne Elizabeth Orsi is covered by the policy of insurance issued by the plaintiff; that the exclusion relied upon by the plaintiff as set forth in plaintiff's Complaint is not applicable to the facts existing at the time of the accident and that, therefore, the plaintiff should be denied declaratory judgment and should be required to defend and pay any judgment which may be rendered against the defendants in favor of Suzanne Elizabeth Orsi in the State Court action. Defendants further allege that plaintiff has waived any policy defense it may have respecting the exclusionary clause referred to in the plaintiff's Complaint, and that plaintiff is estopped to deny coverage under the exclusionary clause mentioned in plaintiff's Complaint. Defendants Ronald Turner and James J. O'Donnell further pray that they be granted a declaratory judgment imposing upon plaintiff the obligation to provide coverage for any liability of these defendants arising out of the accident and injuries to Suzanne Elizabeth Orsi.

The defendants, Suzanne Elizabeth Orsi and Leo Orsi, answered the Complaint of the plaintiff, alleging that the policy of insurance attached to plaintiff's Complaint be declared to be in full force and effect at the time of the injury complained of, and deny that there was a joint venture between the defendants, Ronald Turner, James O'Donnell and William Haydon Payne, and further that if there was a joint venture the insurance policy did cover the accident in question for the reason that the insured was engaged in the activity for which the insurance was written. These defendants pray that the Court make a finding that the Maryland Casualty Company has coverage under its Policy No. 31–613175 issued to Ronald Turner and James J. O'Donnell, d/b/a Woodstock Drive-in Theatre, and to find Suzanne Elizabeth Orsi is a third party beneficiary under the policy.

The Counter-claim of the defendants, Ronald Turner and James J. O'Donnell, d/b/a Woodstock Drive-in Theatre is not before the Court at this time and is to be dealt with at some later date.

On April 25, 1975, all defendants herein moved for summary judgment, and on May 5, 1975, the plaintiff, Maryland Casualty Company moved for summary judgment. Also on May 5, 1975, the plaintiff requested admissions of Ronald Turner and James J. O'Donnell, d/b/a Woodstock Drive-in Theatre and also requested admissions of Suzanne Elizabeth Orsi and Leo E. Orsi. Thereafter, on May 20, 1975, all defendants filed their Answers to Request for Admissions. On May 20, 1975, all parties signed and filed a Stipulation which reads as follows:

"Comes now the Plaintiff and Defendants in the above captioned and numbered cause and hereby stipulate and agree that the following transcripts, by deposition and trial testimony, may be admitted into the Federal Court proceedings for the purpose of this Court having available all prior testimony in considering the respective Motion for Summary Judgments of parties hereto.

1. Depositions of William Haydon Payne, Densel Myers and Billy Mack Woodring taken on March 18, 1975.

2. Deposition of William Haydon Payne taken on May 27, 1974.

3. Deposition of James A. Wood taken on May 27, 1975.

4. Depositions of Ronald Turner taken on May 27, 1974, and on October 10, 1974.

5. Deposition of Densel Myers taken on May 21, 1974.

6. Transcript of proceedings of the non jury trial of the District Court of Oklahoma County on May 28, 1974."

On September 25, 1975, the parties filed a further Stipulation of Facts.

The Court has carefully reviewed the entire file, the pleadings, the Stipulations, the Requests for Admissions and Answers to Requests for Admissions and the depositions as set out in the Stipulation of May 20, 1975. The Court has carefully read the scholarly briefs of the parties and has reviewed the policy of insurance No. 31–613175, and based upon all of the foregoing the Court finds and concludes as follows:

The Maryland Casualty Company issued its liability insurance policy to Ronald Turner and James J. O'Donnell, d/b/a Woodstock Drive-in Theatre, which policy had a designation that the named insured was a partnership.

The policy of insurance, because of its exposure, provided for a fixed premium and the right to audit the business of the theatre to determine if additional premiums should be paid for the exposure and coverage.

In July, 1973, Woodstock Drive-in Theatre owed KWHP Radio Station between $70 and $80, a debt which was long past due, and in order to help each other in their respective distressed businesses they entered into an agreement whereby for a period of 10 days prior to August 5, 1973, KWHP Radio Station would advertise "Fun Night at Woodstock" by making commercial plugs every hour, the wording and time period of such commercial plugs being in the exclusive control of KWHP. KWHP agreed to furnish free two or three bands which would play on the premises of Woodstock Drive-in Theatre from 5:30 p. m. August 5, 1973, until approximately dark. Through this arrangement KWHP Radio Station would receive ½ of the gate receipts collected from ticket sales and would cancel the debt owed by Woodstock Drive-in Theatre.

It was agreed that Woodstock Drive-in Theatre would show three movies suitable for entire family viewing; that Woodstock Drive-in Theatre would have complete control of its premises to the exclusion of KWHP and would have all concession rights and profits; that when the night's business was concluded Woodstock would pay ½ of the gate receipts to KWHP for its advertising services rendered in promoting "Fun Night at Woodstock."

On the night of August 5 Woodstock Drive-in Theatre did pay to KWHP Radio Station by check marked "for advertisement" the amount of $642.50 for its ½ of the total gate receipts for the advertising services rendered by KWHP as per their agreement.

The Court finds that when Suzanne Elizabeth Orsi and her date arrived at the Woodstock Drive-in Theatre the bands were no longer playing and that the movie was in progress; that there was a large crowd of people and many vehicles on the premises and that at about 11:00 p. m. one of the patrons in a vehicle proceeded to leave the premises without his lights on and in doing so ran over the body of Suzanne Elizabeth Oris, breaking her back and causing her to be totally paralyzed from her waist down, which condition is permanent and damaging.

The Court finds that Suzanne Elizabeth Orsi filed a suit in early 1974 in the District Court of Oklahoma County; that the Maryland Casualty Company took from its insured Woodstock Drive-in Theatre through Ronald Turner, a non-waiver agreement to represent Woodstock Drive-in Theatre in the litigation. A few days later Maryland Casualty Company withdrew its defense by letter to Ronald Turner and Woodstock Drive-in Theatre. Thereafter Ronald Turner and James J. O'Donnell, d/b/a Woodstock Drive-in Theatre retained David W. Edmonds, an attorney with the firm of Foliart, Mills & Niemeyer, to represent them in the case, and the litigation in that case has now proceeded to judgment, but is not before this Court at this time.

The Court finds that the arrangements between Ronald Turner and James J. O'Donnell, d/b/a Woodstock

Drive-in Theatre and KWHP Radio Station did not constitute a joint venture, and further finds that Maryland Casualty Company's denying liability under its policy by claiming the arrangement was a joint venture was erroneous.

From a careful reading of the policy of insurance No. 31–613175 issued by Maryland Casualty Company, the following limits of liability are shown: Each Person, $100,000 and Each Occurrence $300,000.

The Court finds in the insurance policy under PERSONS INSURED, and not under provisions marked EXCLUSIONS, the following:

"This insurance does not apply to bodily injury or property damage arising out of the conduct of any partnership or joint venture of which the insured is a partner or member and which is not designated in this policy as a named insured."

The Court finds that this provision does not in any way limit Maryland Casualty Company's liability under the policy of insurance:

(a) There was no joint venture between Ronald Turner and James J. O'Donnell, d/b/a Woodstock Drive-in Theatre and KWHP Radio Station;

(b) There was no partnership between Ronald Turner and James J. O'Donnell, d/b/a Woodstock Drive-in Theatre and KWHP Radio Station;

(c) The independent functions and services performed by KWHP constituted nothing more than its normal advertising business and its compensation was not based upon $2.50 to $3.50 per commercial plug, but was based upon ½ of the gate receipts collected from "Fun Night" which does not constitute a joint venture.

(d) The drive-in theatre operated its movie business in all respects free and independent of any control or supervision by KWHP Radio Station and only agreed to pay, for the services rendered by KWHP for its advertisement in soliciting a large crowd, ½ of the gate receipts plus a discharge of its old obligation to KWHP, which does not constitute a joint venture. There was no intent by either party to form a joint venture.

(e) Each party, Woodstock Drive-in Theatre and KWHP Radio Station was separate and independent and neither had any authority or control over the other.

(f) Under the agreement each party would assume and pay its own losses, if any, each being an independent contractor.

The sole question before the Court on the Motion for Summary Judgment is whether or not there is a question of fact before the Court or a question of law based upon the undisputed facts. The Court finds and concludes from a careful study of all of the depositions, the admissions and exhibits, which are agreed upon, that the agreement does not constitute a joint venture but a simple arrangement for the payment of advertising services, and the material issue is the construction of the policy and is a question of law for the Court.

The Court, therefore, finds that plaintiff, Maryland Casualty Company's Motion for Summary Judgment should be denied, and that the Motions of the defendants for Summary Judgment should be granted.

The Court concludes as a matter of law as follows:

The Federal Communications Act, Title 47 U.S.C. § 303, states in part:

". . . [T]he Commission from time to time, as public convenience, interest, or necessity requires, shall—

(f) make such regulations not inconsistent with law as it may deem necessary . . . to carry out the provisions of this chapter."

The Commission, in exercising its regulatory power, has established

limitations on the scope of activities in which a broadcasting station may engage. A station must control and supervise its own broadcasting, *Voliva v. WCBD, Inc.*, 313 Ill.App. 177, 39 N.E.2d 685 (1942), which may operate to prevent a station from entering into partnerships or joint ventures. The governing standard of "public interest" thus vitiates some decisional laws relating to joint ventures, making different considerations applicable as to whether a joint venture exists in the instance of a broadcasting station.

■ A partnership is a distinct legal entity separate and apart from the parties composing it. *Parks v. Riverside Insurance Co. of America*, 308 F.2d 175 (C.A. 10, 1962); *W. B. Johnston Grain Co. v. Self*, 344 P.2d 653 (Okl.1959).

■ The claimed joint venture between Ronald Turner and James J. O'Donnell, d/b/a Woodstock Drive-in Theatre and KWHP Radio Station is without proper foundation inasmuch as there was no intention on the part of the parties, either or both of them, to form a joint venture, and the evidence is clear that KWHP had no seizure rights in and to the Woodstock Drive-in Theatre. *Municipal Paving Co. v. Herring*, 50 Okl. 470, 150 P. 1067 (1915).

■ The claimed exclusion is ambiguous, not clear and is not conspicuously set out in the insurance policy and such exclusion cannot stand and cannot be permitted to defeat reasonable expectation of the insured, namely, Ronald Turner and James J. O'Donnell, d/b/a Woodstock Drive-in Theatre as principals under the insurance policy. *United States Fidelity & Guar. Co. v. Virginia Eng. Co.*, 213 F.2d 109 (C.A.4, 1954); *See Corbin on Contracts* § 537:

"As our system of contract law has grown, one of its chief purposes is to secure the realization of expectation reasonably induced by expressions of agreement, when that can be done without running counter to other expectations and understandings that were also reasonably induced."

*See also, Gerhardt v. Continental Ins. Cos.*, 48 N.J. 291, 225 A.2d 328 (1966).

The promotional activities of KWHP did not amount to a joint venture but amounted to a contract between Woodstock Drive-in Theatre and KWHP Radio Station for employment of KWHP to solicit a large crowd for the August 5 business of the outdoor theater.

46 Am.Jur.2d, Joint Ventures, § 3 distinguishes joint ventures from other transactions and states in part:

"And a joint venture is to be distinguished from a relationship of independent contractor, the latter being one who, exercising an independent employment, contracts to do work according to his own methods and without being subject to the control of his employer . . ."

This is true inasmuch as KWHP Radio Station exercised its own judgment, and its duty was that of having plugs on its radio station at certain intervals throughout the days preceding August 5, 1973.

In *Campbell v. Smith*, 106 Okl. 26, 232 P. 844 (1925) the Oklahoma court stated that the relation of joint adventurers is governed by the principles which constitute and control the law of partnership. Also, that the usual test of a partnership as between the parties to a joint venture is their intent to become partners.

The Court concludes as a matter of law that the claimed exemption of liability is without merit and should be denied and that the policy provisions should be enforced.