AUSTIN P. KELLER CONSTRUCTION
COMPANY, INC., et al., Allen
Montgomery, Respondents,

v.

COMMERCIAL UNION INSURANCE
COMPANY, et al., Defendants,

North Central Public Service,
Respondent,

City of Anoka, Defendant,

Drew Agency, Inc., Respondent,

Maryland Casualty Insurance Company,
Petitioner, Appellant,

Mission Insurance Company, Defendant.

Cedarleaf, Cedarleaf & Cedarleaf,
Inc., Respondent,

Great American Insurance
Company, Defendant.

Nos. C9–84–1320, C6–84–1291
and C0–84–1271.

Supreme Court of Minnesota.

Jan. 17, 1986.

Ronald M. Michaelson, Brian J. Love, Minneapolis, for Maryland Cas. Ins. Co.

Timothy A. Sullivan, Malcolm G. McDonald, St. Paul, for Austin P. Keller Const. and Erwin Montgomery Const. Co.

Dale B. Lindman, Minneapolis, for Allen Montgomery.

Robert M. Frazee, Minneapolis, for North Central Public Service.

John Parringont, Minneapolis, for City of Anoka.

Michael C. Lindberg, Minneapolis, for Drew Agency.

John B. Gordon, Minneapolis, for Mission Ins. Co.

Timothy W. Aldeck, Minneapolis, for Cedarleaf, Cedarleaf, & Cedarleaf.

**534**

Michael S. Kreidler, Minneapolis, for Great American Ins. Co.

Gerald W. VonKorff, St. Cloud, for Eleanor Knutson.

KELLEY, Justice.

Is an insurer in a contractor's comprehensive general liability insurance policy liable to indemnify and defend the policy named insured from claims arising from a joint venture which had terminated years before the issuance of the policy, where the policy contained an exclusion against claims arising out of conduct of a joint venture of which the insured was a member if the joint venture was not designated in the policy as a named insured? The trial court certified the question to the court of appeals. A majority of a panel of that court ruled that the joint venture exclusion was inapplicable to the insured. *Austin P. Keller Construction Co. v. Drew Agency, Inc.*, 361 N.W.2d 79 (Minn.App.1985). We reverse and remand for trial.[1]

Keller and Erwin Montgomery Construction Company (Montgomery) formed a joint venture in 1970 to construct water and sewer lines for the City of Anoka. The joint venture was dissolved shortly after completion of the project in 1972. Ten years later a gas explosion occurred in Anoka, causing personal injury and property damage. The utility owning the gas lines was sued. The two contractors, who had comprised the joint venture, were joined as parties defendant, on the theory that the explosion resulted from the negligence of the joint venture in backfilling the sewer and water trenches. While the joint venture existed (1971–1972), Keller and Montgomery had purchased insurance protecting the joint venture as such. That insurance only afforded coverage for claims maturing against the joint venture during the policy term. At the time of the 1982 explosion, Keller was the named insured in a contractor's comprehensive general liability policy written by Maryland. This policy covered the period July 1, 1981 to July 1, 1982. Among other coverages, the policy provided "completed operations" coverage. The Maryland policy contained a standard exclusion, generally found in contractor's comprehensive general liability policies since the mid-sixties, which reads:

> This insurance does not apply to bodily injury or property damage arising out of the conduct of any partnership or joint venture of which the insured is a partner or member and which is not designated in this policy as a named insured.

This policy failed to name the 1971–72 joint venture, composed of Keller and Montgomery, as a named insured. Keller claims it was unaware it needed to list the long-dissolved joint venture in order to have "completed operations" coverage protecting it against claims arising out of the joint venture's operations ten years before.

Drew contends that when application was made by Keller in 1981, although ad-

---

1. This case originally stems from a declaratory judgment action brought by two construction companies seeking determination that several insurers were obligated to defend and indemnify them on personal injury and property damage claims arising out of a gas explosion in Anoka in March 1982. Following certification to it, the court of appeals consolidated the appeals of three insurers and a panel majority ruled that the joint venture exclusion, in each case, was inapplicable to the named insured. We granted further review to the insurers. Since doing so, however, the underlying personal injury and property damage claims, as well as the insurance coverage disputes between the companies and their insureds, have been settled with the exception of two parties—Maryland Casualty Insurance Company (Maryland), which issued a comprehensive general liability insurance policy for the period July 1, 1981 to July 1, 1982 to Austin P. Keller Construction Company (Keller), and Drew Agency, Inc. (Drew), which had procured the policy as Keller's agent. Maryland contributed on behalf of Keller, $125,000 toward the settlements, taking from Keller a loan receipt. The remaining action, therefore, is by Maryland against Drew for indemnity alleging Drew erred or omitted to place appropriate coverage for Keller. Thus, if the exclusion is invalid, as the court of appeals ruled, Maryland's claim against Drew fails, but if it is valid, Maryland's claim against Drew must be remanded for trial.

mittedly Keller had been a member of a joint venture ten years before, it was not then a member of such an entity. Focusing on the use of the words "joint venture of which the insured is * * * a member" in the exclusion, Drew asserts it was unnecessary to name the old joint venture as a named insured in the policy so as to trigger "completed operations" liability coverage. In essence, the majority of the panel of the court of appeals agreed with that contention. The majority noted, "If the insurers intended to exclude claims arising out of work by a terminated joint venture they could have specified 'joint venture of which the insured *is or was* a partner or member.'" *Keller*, 361 N.W.2d at 82 (emphasis in original).

The dissenting judge argued that the joint venture exclusion was clear and unambiguous and should, therefore, be held valid and enforceable. The difference between the two positions seems to be the interpretation of the legal effect of dissolving the joint venture. The majority assumes the joint venture terminated long before the issuance of the Maryland policy. The dissent, however, argues that while the joint venture may be considered terminated for some purposes, it continues "to exist as an entity which can be held liable for past acts and omissions of the joint venture." *Id.* at 84 (Wozniak, J., dissenting). Accordingly, the dissent argues, for the purpose of defining the parameters of the insurer's liability for "completed operations" claims, the joint venture is in existence.

Although, in a strict sense, not a copartnership, a joint venture generally is governed by rules and principles applicable to partnership relationships. *Rehnberg v. Minnesota Homes, Inc.*, 236 Minn. 230, 234, 52 N.W.2d 454, 457 (1952). The dissolution of a partnership does not itself discharge the liability of a partner for acts or omissions that occurred during the formal existence of the entity. Minn.Stat. § 323.-35 (1984). In a joint venture, the individual parties are jointly liable for injuries to third parties due to negligence based on their mutual undertaking. *Krengel v. Midwest Automatic Photo, Inc.*, 295 Minn. 200, 208,

203 N.W.2d 841, 846 (1973). From the standpoint of tort responsibility, a joint venture continues to exist legally as long as it can be found liable for damages arising from joint venture activities; its members may be sued individually and found liable for damages caused by the joint venture. Thus, in this instance, Keller's liability for the personal injuries and property damage caused by the gas explosion arose from its 1970 association with Montgomery in the joint venture construction project—an association that was not disclosed to Maryland at the time the 1981–82 policy was purchased. Keller, of course, is unable to claim the 1972 dissolution of the joint venture terminated all its tort liability arising out of acts of the joint venture. The question presented by this case is whether a contractor's comprehensive general liability insurer can be saddled with liability to defend and indemnify its insured (a) 10 years after the de facto termination of the joint venture, (b) more than 10 years after the occurrence of the alleged tortious acts giving rise to a liability claim, (c) when the insured failed to notify the insurer of its membership in the old joint venture, (d) thereby preventing the insurer from endorsing the joint venture as a named insured on the policy and evaluating the risk and charging a premium accordingly.

Were we to accept Drew's contention that Maryland's exclusion clause applied only to joint ventures existing when the policy was applied for—or, perhaps for any joint venture in which the named insured was a member during the policy period, the exclusionary clause found in practically all contractor's comprehensive general liability policies would be essentially meaningless. In support of its contention, Drew stresses that tort liability often continues to exist long after termination of the legal relationship giving rise to it. Of course that is true. Drew cites the liability of an owner of a motor vehicle which may continue long after the principal/agent relationship between the owner and the driver has ceased to exist. So, too, the liability of Keller continues to exist even though the joint

venture was terminated ten years before the claim. That, however, is not the issue. Using Drew's owner-driver analogy, certainly Drew would not contend that the automobile insurer for a 1985 policy year would be liable to indemnify and defend the automobile owner for claims arising out of a 1982 accident unless the insurer contracted to assume such liability and had the opportunity to charge a premium appropriate to the additional risk. If Keller, in the underlying personal injury and property damage suit, was alleged to be causally negligent because of contract work it did in its separate corporate capacity, Keller would be entitled to defense and indemnity. But in this case, Keller's liability arises out of acts of a joint venture. By the clear and unambiguous terms of the policy, Maryland's coverage liability exists only if that joint venture was listed as a named insured on Maryland's policy.

Although the precise exclusionary clause has been in wide use by comprehensive general liability insurers in the United States for approximately 20 years, only two reported cases addressing the issue have been called to our attention by counsel. In both, the insurance policies used language identical to the Maryland policy here in issue. In each case, the courts held the policy exclusionary language to be clear and unambiguous and denied coverage to a joint venturer because the joint venture had not been endorsed on the policy as a named insured. In both cases, the act or omission giving rise to the underlying litigation occurred after the joint venture had completed its work on the project. *Associated Metals & Minerals Corp. v. Hartford Accident & Indemnity Co.*, 1977 Fire & Casualty Cas. (CCH) 907 (S.D.N.Y. March 21, 1977); *Fireman's Fund Insurance Co. v. E.W. Burman, Inc.*, 120 R.I. 841, 391 A.2d 99 (1978).[2] We believe those cases are persuasive and hold that the policy exclusionary language is clear and unambiguous. Since Keller's original claim against Maryland to establish coverage is defeated by the exclusion, Maryland is not liable to indemnify and defend the joint venture liability claim.[3]

We, therefore, reverse the court of appeals and remand to the trial court for trial of Maryland's case for indemnity against Drew Agency.

COYNE, J., took no part in the consideration or decision of this case.

---

**2.** Respondent Drew relied on *Maryland Casualty Co. v. Turner*, 403 F.Supp. 907 (W.D.Okla.1975) which involved this identical clause. That reliance is inapt as the United States District Court in *Associated*, 1977 Fire & Casualty Cas. at 911, clearly demonstrates. The real issue in *Turner* was whether a joint venture existed. When the court found one did not exist, that ended the controversy and the rest of the language in the opinion was obiter dicta.

**3.** Respondent Drew claims Keller should have indemnity and defense coverage under Maryland's policy because Keller, as an insurance purchaser, had "reasonable expectations" of coverage. *See, e.g., Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, 366 N.W.2d 271 (Minn. 1985). First of all, it is doubtful the claim is properly before us. Drew raises it for the first time in its brief in this court. Some of the parties, no longer in the case, did raise the issue in both the trial court and the court of appeals, but neither court addressed that claim. Nor-

mally, an appellate court will not consider a claim of a party not raised below. *See Thayer v. American Fin. Advisers, Inc.*, 322 N.W.2d 599, 604 (Minn.1982); *W.H. Barber Co. v. McNamara-Vivant Contracting Co.*, 293 N.W.2d 351, 357 (Minn.1979). But even if the "reasonable expectation" claim is properly before the court, it is clear it is inapplicable in this case. The fact Keller and Montgomery had purchased joint venture liability insurance in 1971 demonstrates that Keller was aware of the difference in the scope of coverages afforded to it as an individual contractor as distinguished from a member of a joint venture. Moreover, it is simply unreasonable for Keller to expect Maryland to provide indemnity and defense ten years after the event without being informed of the potential of liability claims arising from the joint venture activities and without being given an opportunity to assess the risk and to charge an appropriate additional premium to cover such potential risks.