461 N.W.2d 230 (1990)
UNITED STATES FIRE INSURANCE CO., Respondent,
v.
FIREMAN'S FUND INSURANCE CO., Appellant,
U.S. Salt-Johnson Enterprises, Inc., Delores Ann Wieczorek, Trustee for Decedent Paul Wieczorek, John Paul Dotterweich, Bernard J. LaCanne, Respondents.
Nos. C2-90-888, C6-90-893.
Court of Appeals of Minnesota.
October 2, 1990.
Review Denied December 17, 1990.
Theodore J. Smetak, Karen Melling Van Vliet, Gregory J. Johnson, Arthur, Chapman & McDonough, P.A., Minneapolis, for U.S. Fire Ins. Co.
*231 Timothy P. Tobin, Wade R. Wacholz, Gislason, Dosland, Hunter & Malecki, Minnetonka, for Fireman's Fund Ins. Co.
Mark E. Jacobson, Jacobson, Stromme & Harwood, Minneapolis, for U.S. Salt-Johnson Enterprises, Inc.
Phillip P. Hansen, Hansen Law Office, Ltd., Winona, for Delores Ann Wieczorek, Trustee for Decedent Paul Wieczorek.
John Paul Dotterweich, Morristown, pro se.
Michael B. Goodman, Joseph M. Guzinski, Goodman & Guzinski, P.A., Rochester, for Bernard J. LaCanne.
Considered and decided by GARDEBRING, P.J., and HUSPENI and CRIPPEN, JJ.

OPINION
HUSPENI, Judge.
The question presented in this appeal arises out of two declaratory judgment actions brought to reconcile an insurance coverage dispute between insurance companies as to which is the primary insurer of the loss emanating from an automobile accident. Pursuant to cross-motions in each action, the trial court granted summary judgment determining coverage provided by appellant Fireman's Fund Insurance Company (Fireman's Fund) was primary. The appeals have been consolidated. We affirm.

FACTS
On November 18, 1986, Paul J. Wieczorek was killed when the automobile he was driving was struck by a tractor-trailer rig operated by respondent John P. Dotterweich. Also involved in the accident was a tractor-trailer rig operated by respondent Bernard J. LaCanne.
Each rig driver owned the tractor he was operating and each tractor was under an identical one-year lease to respondent U.S. Salt-Johnson Enterprises, Inc. (U.S. Salt). The trailers being pulled by the tractors were owned by U.S. Salt and were "cross-leased" back to LaCanne and Dotterweich. At the time of the accident, the vehicles were carrying road salt to be delivered to Olmsted County.
The lease agreements required Dotterweich and LaCanne to maintain and repair the tractors while hauling freight on behalf of U.S. Salt and to insure them against liability. Each of the leases provided:
[U.S. Salt] shall have the exclusive possession, control, and use of said equipment and shall assume full and complete responsibility to the public, the shippers and to all state and federal regulatory bodies having jurisdiction, during the entire period of the lease.
Dotterweich was insured under a $70,000 truckman's insurance policy issued by United States Fire Insurance Company (U.S. Fire). LaCanne was insured under a similar policy issued by Farm Bureau Mutual Insurance Company (Farm Bureau) in the amount of $500,000. The policies issued by Farm Bureau and U.S. Fire were designated as "trucker's" or "truckman's" policies and provided coverage for the trucking business operations of the named insureds. Both of the policies were "primary" type policies.
As a regulated motor carrier, U.S. Salt was required by the Interstate Commerce Commission (ICC) and the Minnesota Department of Transportation to assume liability to third parties caused by the negligent acts of its haulers and to provide liability insurance for the protection of the public. U.S. Salt was required to file certificates of insurance with the ICC and the state of Minnesota. U.S. Salt was insured under a comprehensive general liability policy containing business auto coverage of $1 million in combined single limits issued by American Insurance Company, a wholly-owned subsidiary of Fireman's Fund.
Delores Ann Wieczorek, as trustee for the heirs of Paul J. Wieczorek, brought a wrongful death action against Dotterweich, LaCanne and U.S. Salt.[1] Subsequently, *232 Farm Bureau and U.S. Fire each brought separate actions seeking a declaratory judgment that Fireman's Fund was primarily obligated to defend and indemnify LaCanne and Dotterweich in the wrongful death action.

ISSUES
1. Did the trial court err in concluding on the basis of ICC and Minnesota state regulatory requirements that Fireman's Fund was primarily obligated to indemnify LaCanne and Dotterweich?
2. Did the trial court err in concluding on the basis of the "closest to the risk" test that Fireman's Fund was primarily obligated to indemnify LaCanne and Dotterweich?

ANALYSIS
Summary judgment is appropriate when there is no genuine dispute as to any material fact. Minn.R.Civ.P. 56.03. Since the facts in this matter are essentially undisputed, it is proper for this court to determine the issues as a matter of law. See Federated Mutual Ins. Co. v. American Family Mutual Ins. Co., 350 N.W.2d 425, 426 (Minn.App.1984).

I.
The issue of whether insurance coverage acquired by a motor carrier to satisfy the mandates of motor carrier regulations is primary over other coverage insuring an identical risk, is a matter of first impression in Minnesota. Fireman's Fund contends the trial court erred by relying in part on ICC and state and motor carrier regulations in determining as between Fireman's Fund and the insurers of Dotterweich and LaCanne that Fireman's Fund was primarily responsible for liability arising out of the accident.
Some courts have held that ICC regulations which require motor carriers to have insurance coverage are determinative of priority. Argonaut Ins. Co. v. National Indemnity Co., 435 F.2d 718 (10th Cir. 1971); Hagans v. Glens Falls Ins. Co., 465 F.2d 1249 (10th Cir.1972); Aetna Casualty and Surety Co. v. Arkin, 365 F.Supp. 813 (N.D.Ill.1973). A majority of jurisdictions, however, have refused to view the requirement that the motor carrier procure insurance as determinative of its ultimate liability. Such courts have reasoned that the purpose of the regulations is to protect the public, rather than other insurance companies. See Empire Fire & Marine Ins. Co. v. Guarantee National Ins. Co., 868 F.2d 357, 362 (10th Cir.1989); Travelers Ins. Co. v. Transport Ins. Co., 787 F.2d 1133 (7th Cir.1986); Occidental Fire & Casualty Co. v. International Ins. Co., 804 F.2d 983 (7th Cir.1986); Carter v. Vangilder, 803 F.2d 189 (5th Cir.1986); Transport Indemnity Co. v. Paxton National Ins. Co., 657 F.2d 657 (5th Cir.1981), cert. denied 455 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 692 (1982); Carolina Casualty Ins. Co. v. Ins. Co. of North America, 595 F.2d 128 (3rd Cir. 1979). For the most part, courts have held that the question of allocating coverage among insurers is left to the contractual agreements of the parties and any applicable state law.
Applicable Minnesota law is found in Minn.Stat. § 65B.48 which provides that "owners" of motor vehicles are required under the Minnesota No-Fault Act to insure against liability arising out of the operation of their vehicle. In addition, Minn.Stat. § 65B.43, subd. 4 (1988) provides that:
"Owner" means a person, other than a lienholder or secured party, who owns or holds legal title to a motor vehicle or is entitled to the use and possession of a motor vehicle subject to a security interest held by another person. If a motor vehicle is the subject of a lease having an initial term of six months or longer, the lessee shall be deemed the owner for the purposes of sections 65B.41 to 65B.71, and 170.54 * * *.
Here, the trial court held that in view of Minn.Stat. § 65B.43, ICC and state regulations are important in determining priority. The trial court concluded that the equities of the case, as well as section 65B.43, required U.S. Salt to be treated as the owner *233 of the vehicles, and therefore, that the insurer of its business operations was primarily obligated to insure the loss. We agree.
It would be anomalous to conclude that where, as here, a business entity is required by law to insure its operations, and an accident occurs within the scope of those operations, that such required insurance coverage would be excess over nonmandatory coverage incidentally provided. We believe that implicit within the mandate requiring an entity to procure insurance is the designation of that entity as ultimately financially responsible for liability arising out of its operations. This designation is especially valid in light of the provisions of Minn.Stat. §§ 65B.48 and 65B.43, subd. 4. U.S. Salt is deemed the "owner" of the Dotterweich and LaCanne tractors, and as such is mandated to insure those vehicles. See also Gacksetter v. Dart Transit Co., 269 Minn. 146, 152, 130 N.W.2d 326, 330 (1964) (effect of the ICC rules and lease to the motor carrier is to make the owner/driver an employee of the lessee).

II.
For the sake of further analysis, even if we were to forego sole reliance on the motor carrier regulations or the No-Fault Act to determine the responsibility of Fireman's Fund in this matter, there is another basis, to which such regulations are relevant, upon which that responsibility may be determined.
Fireman's Fund does not dispute that the policy it issued to U.S. Salt was "primary" as to the named insured on the policy.[2] It contends, however, that the U.S. Fire and Farm Bureau policies were "primary" as to their named insureds, Dotterweich and LaCanne, also, and that the "other insurance" clauses of the three policies conflict. Therefore, Fireman's Fund argues that the priority of coverage must be determined by which policy is closest to the risk.
We agree with Fireman's Fund that the "other insurance" clauses of the three insurance policies at issue do conflict. The clauses appear as follows:
FIREMAN'S FUND
B. OTHER INSURANCE
1. For any covered auto you own this policy provides primary insurance. For any covered auto you don't own, the insurance provided by this policy is excess over any other collectible insurance. However, while a covered auto which is a trailer is connected to another vehicle the liability coverage this policy provides for the trailer:
a. Is excess while it is connected to a motor vehicle you don't own.
b. Is primary while it is connected to a covered auto you own.
U.S. FIRE
B. OTHER INSURANCE  PRIMARY AND EXCESS INSURANCE PROVISIONS.
1. This policy's liability coverage is primary for any covered auto while hired or borrowed by you and used exclusively in your business and over a route or territory, if any, you are authorized to serve by public authority. This policy's liability coverage is excess over any other collectible insurance for any covered auto while hired or borrowed from you by another trucker. However, while a covered auto which is a trailer is connected to a power unit, this policy's liability coverage:
a. Is on the same basis, primary or excess, as for the power unit if the power unit is a covered auto.

*234 b. Is excess if the power unit is not a covered auto.
FARM BUREAU
4. Other Insurance. With respect to any automobile of the commercial type while leased or loaned to any person or organization, other than the named insured, engaged in the business of transporting property by automobile for others, or any hire private passenger automobile insured on the "cost of hire" basis, or any non-owned automobile, the insurance shall be excess insurance over any other valid and collectible insurance.
The tractors leased from Dotterweich and LaCanne would be "nonowned vehicles" under the language of the Fireman's Fund policy, and therefore the coverage would be excess as to Dotterweich and LaCanne. The coverage would also be considered excess when the trailers insured by Fireman's Fund are connected to "nonowned vehicles."
While U.S. Fire and Farm Bureau argue that U.S. Salt is an "owner" within the meaning of Minn.Stat. § 65B.43, the definition of "owner" under the statute relates only to the provisions of the No-Fault Act. The intent of the Fireman's Fund policy must be determined by the plain meaning of its words. See Dairyland Ins. Co. v. Implement Dealers Ins. Co., 294 Minn. 236, 244-45, 199 N.W.2d 806, 811 (1972) (an insurance policy must be construed according to the terms the parties have used, and the language used must be given its ordinary and usual meaning so as to give effect to the intention of the parties as it appears from the contract). Accordingly, coverage afforded to Dotterweich and LaCanne under Fireman's Fund other insurance clause would be excess.
Similarly, the coverage afforded to LaCanne and Dotterweich by the Farm Bureau and U.S. Fire policies, respectively, also would be excess coverage. Under the U.S. Fire other insurance clause, coverage is excess when the covered auto is hired or borrowed from the named insured. Under the Farm Bureau other insurance clause, coverage is excess when the covered auto is "leased or loaned" to one other than the named insured.
When policies conflict, as do the three policies here, a court must determine which policy had the primary purpose of insuring for the risk that occurred, and which policy was more incidental. Federated Mutual Ins. Co., 350 N.W.2d at 426-27.
In Integrity Mutual Ins. Co. v. State Automobile & Casualty Underwriters Ins. Co., 307 Minn. 173, 239 N.W.2d 445 (1976), the supreme court set forth the legal principles to be applied when "other insurance" clauses conflict. Under Integrity Mutual, allocation of respective policy coverages is to be made in consideration of the "total policy insuring intent," as determined by the primary risks upon which each policy's premiums are based and by the primary function of each policy. Id. at 175, 239 N.W.2d at 446-47.
However, the Minnesota Supreme Court has also enumerated factors to be considered in determining which one of the conflicting policies is "closest to the risk." These factors are:
1. Which [insurer], by its policy, intended to cover "business operations"?
2. Which [insurer] specifically described the accident-involved vehicle in its policy?
3. Which premium is reflective of the greater contemplated exposure?
4. Which company insured the particular risk as an "incident" of its object, and which policy appears to cover the particular car and the risks inherent in using the car for contemplated "business operations" uses?
Federal Ins. Co. v. Prestemon, 278 Minn. 218, 229-30, 153 N.W.2d 429, 436 (1967); compare Integrity Mutual, 307 Minn. at 175, 239 N.W.2d at 446-47 (three-step analysis applied to allocate liability in case involving private passenger vehicles, rather than commercial vehicles). We conclude that under the particular facts of this case, the more appropriate analysis to apply is *235 that which determines which policy is "closest to the risk."[3]
Under the first "closest to the risk" factor, we must determine which policy was intended to cover business operations. The accident in this case directly involved U.S. Salt's business and arose when Dotterweich and LaCanne were hauling salt to a U.S. Salt customer. The Fireman's Fund policy was a business auto policy designed to insure precisely the risk which occurred and is accordingly close to the risk. However, both the U.S. Fire and Farm Bureau policies contemplate risks involved with trucking operations. Thus, it cannot be determined by the policies whether one over another was intended to cover the risk out of which Wieczorek's injuries arose.
The second factor requires an examination as to which policy specifically described the accident-causing instrumentality. The U.S. Fire and Farm Bureau policies are close to the risk because they specifically describe the tractors owned by Dotterweich and LaCanne which were involved in the accident. While the Fireman's Fund policy does not specifically list the vehicles involved in this accident, the policy does provide coverage for "any auto," and is not limited to "specifically described autos." Additionally, an ICC certificate of insurance, relative to U.S. Salt, was filed by Fireman's Fund certifying that it would provide liability coverage for accidents arising out of the operation, maintenance, or use of motor vehicles subject to ICC regulation, "regardless of whether such motor vehicles are specifically described in the policies or not." Notwithstanding such provisions, however, the second factor appears to favor Fireman's Fund.
The third factor of the "closest to the risk" analysis asks which policy premium is reflective of the greater contemplated exposure. The record indicates that the premiums charged by Fireman's Fund for coverage of the trailers leased to Dotterweich and LaCanne were $257 and $387, respectively. Although the total premium amount paid by U.S. Salt to Fireman's Fund was $9,526, it is impossible to determine from the record how much of this amount was related to the specifically described vehicles and how much was associated with coverage of non-listed vehicles. The record is also silent as to the premium amount associated with insurance of the Farm Bureau covered vehicle. Without additional information, the third factor is of little help in determining which carrier should be primarily responsible to indemnify Dotterweich and LaCanne.
The final factor of the "closest to the risk" analysis involves a determination as to which company insured the particular risk as an "incident" of its object; the risk which was inherent in using the vehicle for the contemplated business uses. We believe this factor compels consideration of the Fireman's Fund policy in the context of ICC and Minnesota regulations governing motor carriers. Fireman's Fund clearly intended to issue policies so as to allow U.S. Salt to carry on its business operations. U.S. Salt was the lessee of the vehicles involved in the accident and was a motor carrier operating under ICC and state regulations. The risk present here could not have occurred without compliance with ICC and Minnesota motor carrier regulations. As such, the fourth factor in the "closest to the risk" analysis strongly favors U.S. Fire and Farm Bureau.
*236 We find the fourth factor of the analysis to be determinative. When the accident occurred, U.S. Salt was engaged in shipping salt in interstate commerce, and was undertaking a risk contemplated as within its business operations. ICC and state regulations require a motor carrier to maintain insurance in order to cover precisely this type of risk.

DECISION
The trial court correctly found Fireman's Fund to be the primary insurer and properly granted summary judgment.
Affirmed.
NOTES
[1] The underlying wrongful death action was tried to a jury which found that LaCanne and Dotterweich were each 40% at fault in causing the accident, and that the decedent was 20% at fault.
[2] The Fireman's Fund policy in effect at the time of the incident, due to a clerical error, did not contain a public liability endorsement as required by state and federal regulations. Such an endorsement would have required Fireman's Fund to elect to provide either primary or excess liability coverage. James Barry, the underwriter who handled the U.S. Salt file, testified that in his 25 years of experience, he could not recall an instance where a motor carrier's endorsement had designated excess coverage. Barry indicated, had an endorsement been attached, it would have designated primary coverage.
[3] Farm Bureau urges that the "total policy insuring intent" analysis circumscribed in Interstate Fire & Casualty Co. v. Auto Owners Ins. Co., 433 N.W.2d 82 (Minn.1988) is more appropriate here. We disagree. The facts of Interstate are substantially different from those here. In Interstate, a high school student, injured on school property, had received the entire proceeds of the school's primary insurance. The Interstate court was called upon to determine which of two remaining policies the injured student could look to next for coverage: the school's umbrella policy or the homeowner's policy under which a student supervisor was an insured. The court, in determining that the school's umbrella policy was next available, applied the "total policy insuring intent" analysis. Unlike Interstate, this case involves three insurers, each of which provides primary coverage to its named insured. Further, even if we were to apply the broader analysis of the "total policy insuring intent," the facts of this case would compel a determination consistent with that achieved through the closest to the risk analysis.