**MICKMAN BROTHERS, INC., et al., Respondents,**

v.

**FARM BUREAU MUTUAL INSURANCE CO., Appellant,**

**Douglas Prince, Defendant.**

No. C0–01–1499.

Court of Appeals of Minnesota.

Feb. 26, 2002.

Timothy P. Tobin, Gislason & Hunter, LLP, Minnetonka, MN, for respondents.

Suzanne Wolbeck Kvas, Stringer & Rohleder, Ltd., St. Paul, MN, for appellant.

Steven M. Fuller, Kief, Fuller, Baer, Wallner & Anderson, Bemidji, MN, for defendant Prince.

Considered and decided by TOUSSAINT, Chief Judge, HANSON, Judge, and FOLEY, Judge.*

## OPINION

TOUSSAINT, Chief Judge.

Mickman Brothers, Inc. and Auto Owners Insurance Company brought a declaratory-judgment action against Farm Bureau Mutual Insurance Company, seeking a declaration that Farm Bureau had a duty to defend and indemnify Mickman Broth-

ers in an action for damages arising out of two automobile accidents. The district court granted summary judgment in favor of Mickman Brothers and Auto Owners, reasoning that the policies Farm Bureau had issued contemplated the risk and were primary. Because the Farm Bureau policies provide coverage for both accidents and were issued to satisfy the requirements of motor-carrier regulations, we affirm.

## FACTS

Douglas Prince is an independent trucker who contracted orally with Mickman Brothers, Inc. to transport balsam boughs intrastate for a fixed price per load. Prince transported the boughs in self-unloading hydraulic trailers provided by Mickman Brothers. In 1998, Prince was towing a trailer Mickman Brothers had leased from Mastell Trailer Sales and provided to Prince for transportation of its boughs, when a motorist hit the trailer. The motorist was injured and his car was damaged. In 1999, Prince was similarly towing a trailer Mickman Brothers had leased, this time from Sylva Corporation, Inc., when a motorist hit the trailer and was fatally injured.

*The Farm Bureau Policies*

At the time of both accidents, Prince was the named insured under nearly identical Farm Bureau automobile policies. Both the 1998 and 1999 policies provided coverage for damages arising out of the use of the "owned motor vehicle." The policies defined "owned motor vehicle" as "the motor vehicle or trailer" described in the declarations page. Prince's 1990 semitractor was described in the declarations page of both policies. The Sylva trailer

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

was also described in the declarations page attached to the 1999 policy. Exclusion J in both policies, however, precluded liability coverage for accidents in which Prince's semi-tractor was used to tow any trailer "owned or hired" by the insured but not covered by Farm Bureau.

Pursuant to the requirements of the Motor Carrier Act and the rules and regulations of the Federal Highway Administration and the Interstate Commerce Commission (ICC), the 1998 and 1999 policies contained an endorsement for Motor–Carrier Policies of Insurance for Public Liability, indicating that the Farm Bureau policies provided primary coverage for accidents involving the owned motor vehicle. The policies also contained an endorsement (Form F) verifying the existence of coverage in accordance with state motor-carrier laws. Farm Bureau filed Form F with the state to allow Prince to obtain operating authority.

### The Auto Owners Policies

In 1998 and 1999, Mickman Brothers was the named insured under automobile-liability policies issued by Auto Owners. The applicable Auto Owners policies provided coverage for bodily injury and property damage for which Mickman Brothers or another person could be liable because of the operation of Mickman Brothers' automobile when used with Mickman Brothers' permission. The policies defined "automobile" to include a commercial trailer. But the policies excluded coverage when Mickman Brothers' trailers were used with automobiles Auto Owners did not insure.

The 1998 and 1999 Auto Owners policies contained a Hired–Automobile–Liability–Coverage endorsement extending coverage to automobiles (including trailers) Mickman Brothers "hire[d], lease[d], or borrow[ed] for use in [its] business." But the coverage the Hired Automobile endorsements provided was expressly designated as excess over other insurance available to Mickman Brothers.

The Auto Owners policies excluded from coverage persons subject to the security requirements of motor-carrier laws because of transporting Mickman Brothers' merchandise.

### The present action

In April 2000, Mickman Brothers and Auto Owners brought a declaratory-judgment action seeking a declaration that (1) Farm Bureau had a duty to defend and indemnify Mickman Brothers for claims arising out of the 1998 and 1999 accidents; and (2) the Farm Bureau policies were primary. Shortly after, the parties brought cross-motions for summary judgment. The court granted summary judgment in Mickman Brothers' and Auto Owners' favor, reasoning that the tractor had caused the accident, that it was expressly mentioned in the declarations page attached to the Farm Bureau policies, and that the premium Farm Bureau charged contemplated the exposure because the risk was inherently part of the business operation for which Prince had obtained the policy. The court also noted that although the Auto Owners policies covered the trailers, they were not intended to provide primary coverage. This appeal followed.

### ISSUES

I. Are the trailers Mickman Brothers provided Prince to transport its merchandise "hired" by Prince within the meaning of Farm Bureau policy Exclusion J?

II. Do the Farm Bureau policies provide primary coverage for the 1998 and 1999 accidents by virtue of the Certificate of Insurance Farm Bureau filed with the state and federal governments pursuant to motor-carrier regulations, indicating that its policies' coverage was primary?

## ANALYSIS

■ On appeal from summary judgment, the reviewing court must determine whether genuine issues of material fact remain for trial and whether the district court erred in applying the law. The interpretation of an insurance policy raises a question of law, which we review de novo. *Garrick v. Northland Ins. Co.*, 469 N.W.2d 709, 711 (Minn.1991).

■ Insurance policies must be interpreted as a whole. *Hubred v. Control Data Corp.*, 442 N.W.2d 308 (Minn.1989). In interpreting insurance policies, courts must give unambiguous terms their plain, ordinary, and popular meaning, unless the parties establish a contrary intent. *See Austin P. Keller Constr. Co. v. Commercial Union*, 379 N.W.2d 533 (Minn.1986). Ambiguous terms, by contrast, must be construed in favor of coverage. *Safeco Ins. Co. v. Lindberg*, 394 N.W.2d 146, 148 (Minn.1986). Terms are ambiguous if they are susceptible of more than one meaning. *Nordby v. Atl. Mut. Ins. Co.*, 329 N.W.2d 820, 822 (Minn.1983).

### I.

■ Farm Bureau first argues that liability coverage for the 1998 accident is precluded by policy Exclusion J, which provides that the Farm Bureau policy does not apply "while the owned motor vehicle is used for the towing of any trailer * * * owned or hired by the insured and not covered by like insurance in the company." Farm Bureau claims that the trailer Mickman Brothers provided Prince to transport its boughs was "hired" by Prince because the price Prince charged Mickman for transporting its goods in trailers Mickman provided was lower than the price he would have charged had Prince been re-quired to provide his own trailer. The reduced price thus reflected the cost of "hiring" the trailer.

Accordingly, whether Exclusion J applies depends on the meaning of the term "hired." Minnesota courts have not construed the term "hired" within the meaning of an automobile-policy exclusion similar to the one at hand or in the unique context of intrastate trucking.[1] But courts in other jurisdictions have. According to these courts, a vehicle is "hired" within the meaning of an exclusion identical to Exclusion J when, in addition to a contract for services, the parties have a contract by which the vehicle is hired or leased to the insured for his or her exclusive use or control for a fixed sum. *See Penn. Threshermen & Farmers' Mut. Cas. Ins. Co v. Hartford Accident Indem. Co.*, 310 F.2d 618, 620–21 (4th Cir.1962) (trailer employer furnished independent trucker to haul gasoline tanks for employer for a fixed sum was not "hired" within meaning of liability-policy exclusion for trailers "hired" by insured and not covered by like insurance in the company, where insured paid employer no rental or other compensation for use of truck); *Boyington v. Am. Liberty Ins. Co.*, 284 Ala. 581, 226 So.2d 640, 642 (1969) (trailer provided to insured by employer to haul pulpwood for mutual benefit of parties not "hired" within meaning of liability-policy exclusion where insured paid nothing for use of trailer and charged usual sum for hauling pulpwood); *Hanagriff's Mach. Shop, Inc. v. Slaw Constr. Co., Inc.*, 380 So.2d 146 (La.Ct. App.1979) (trailer furnished by shipper to named insured to haul sugar cane did not constitute "hired trailer" within meaning of liability-policy exclusion where shipper hired insured's tractor, furnished trailer,

---

1. *Cf. Bituminous Cas. Corp. v. Travelers Ins. Co.*, 122 F.Supp. 197, 202–03 (D.Minn.1954) (interpreting term "hired" as defined in poli-cy); *Woodrich Constr. Co. v. Indem. Ins. Co.*, 252 Minn. 86, 89 N.W.2d 412 (Minn.1958) (same).

*and paid insured less than it would have paid haulers providing their own trailer*).[2]

■ We agree that a vehicle is "hired" within the meaning of a hired-automobile exclusion only when the parties have a separate agreement by which the vehicle is leased to the insured for his or her exclusive use or control for a fixed sum. Under this definition, Prince did not "hire" the trailer for purposes of Exclusion J because he did not have a separate agreement by which he procured the trailer for his exclusive use and control for a fixed sum. Independently of whether a separate agreement existed, the record contains no evidence that Prince compensated Mickman Brothers for the use of the trailers, or that Mickman Brothers provided the trailers to Prince for any purpose other than to advance Mickman Brothers' specific business objectives. "To hire" means "[t]o procure the temporary use of property, usu[ally] at a set price." *Black's Law Dictionary* 735 (7th ed.1999). The plain and ordinary meaning of the term "imports a monetary consideration or its equivalent." *Boyington,* 226 So.2d at 642. The record contains no evidence that Prince provided Mickman Brothers monetary consideration or its equivalent for the use of the trailer.

Our interpretation of the term "hired" also serves the evident purpose of a hired-automobile exclusion. The exclusion ensures that a trucker who hauls a trailer he or she owns or has exclusive control over maintains proper liability coverage on both the semi-tractor and the trailer. But if a trucker uses a trailer a shipper provides at no charge and for a specific purpose, then a hired-automobile exclusion should not apply.

Farm Bureau argues that Prince compensated Mickman Brothers by charging it a lower price per load than he would have charged had he provided his own trailer. According to Farm Bureau, the term "hired" is ambiguous because it is unclear whether coverage exists when an employer furnishes an insured a trailer and the insured receives less pay for transporting the employer's goods than he would have received had he provided his own trailer. We disagree.

First, the record contains no evidence that Prince received less money per load than he would have received had he provided his own trailer. Alternatively, if the term "hired" is ambiguous, the ambiguity must be resolved in favor of the insured. *See Safeco,* 394 N.W.2d at 148. Farm Bureau prepared the policy and had the option of using its own words in drafting the exclusionary provisions. Insurers should expect only the interpretation commonly accepted in a popular and ordinary sense, and not some strained, unusual, or technical interpretation. The commonly accepted interpretation of the term "hired" imports monetary consideration or its equivalent. Because the record does not establish that Prince provided Mickman Brothers monetary consideration or its equivalent for the use of the trailers, the

---

2. Courts construing the term "hired" in the context of other policy provisions have also defined the term to require a separate contract by which the vehicle is hired or leased to the named insured for his or her exclusive use and control. *See Sprow v. Hartford Ins. Co.,* 594 F.2d 418, 422 (5th Cir.1979); *Canal Ins. Co. v. Liberty Mut. Ins.,* 395 F.Supp. 962 (N.D.Ga.1975); *Wostal v. Travelers Ins. Co.,* 239 F.Supp. 395 (S.D.Tex.1965); *Citizens Mut. Auto. Ins. Co. v. Fireman's Fund Ins. Co.,* 234 F.Supp. 931 (W.D.Mich.1964); *S. Gen. Ins. Co. v. Alford,* 234 Ga.App. 615, 507 S.E.2d 179, 181–82 (1998); *Sampay v. Morton Salt Co.,* 482 So.2d 752 (La.Ct.App.1986); *Consolidated Mut. Ins. Co. v. Bankers, Ins. Co.,* 244 Md. 392, 223 A.2d 594 (1966).

trailers were not "hired" within the meaning of Exclusion J.

The Farm Bureau policies thus initially provide Prince liability coverage for the 1998 accident. Farm Bureau concedes that its 1999 policy provides coverage for the 1999 accident because it lists the Sylva trailer as one of the owned motor vehicles. Auto Owners similarly concedes that its policies provide Mickman Brothers liability coverage for both accidents. Both insurers claim, however, that their coverage is not primary.

## II.

In determining whether an insurance policy provides primary coverage, we first look at the policies' internal rules of priority, generally contained in the "other-insurance" clauses. *See U.S. Fire Ins. Co. v. Fireman's Fund Ins. Co.*, 461 N.W.2d 230, 233 (Minn.App.1990), *review denied* (Minn. Dec. 17, 1990). If the internal rules of priority conflict in a motor-carrier case, we then look at the insurance carriers' regulatory filings. *Id.* We may rely solely on the motor-carrier regulatory filings in determining priority. *Id.* at 234. Or we may conduct a "closest-to-the-risk" analysis and rely on the motor-carrier regulations in determining which policy is closest to the risk, i.e., which policy had the primary purpose of insuring for the risk that occurred. *Id.*

The Farm Bureau and Auto Owners policies contain conflicting "other-insurance" clauses applicable to liability claims. The Farm Bureau "other-insurance" clause provides that:

> The company shall not be liable under Part I [the liability coverage section] for a greater proportion of any loss than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all collectable insurance against such loss; provided,

however, the insurance with respect to Paragraph (a) a temporary substitute automobile or non-owned automobile shall be excess insurance over any other collectible insurance, Paragraph (b) a newly acquired automobile shall not apply to any liability against which the insured has other collectible insurance applicable thereto in whole or in part.

The Auto Owners "other-insurance" clause similarly provides that coverage is "excess over any other insurance available to [Mickman Brothers]."

This court has clearly stated, however, that insurance coverage a motor carrier acquires to satisfy the mandates of motor-carrier regulations is primary over other non-mandatory coverage insuring an identical risk. *Id.* at 233 ("We believe that implicit within the mandate requiring an entity to procure insurance is the designation of that entity as ultimately financially responsible for liability arising out of its operations.")

Minnesota law requires a regulated motor carrier like Prince to provide insurance in a set amount to cover "injuries and damage to persons or property resulting from the operation or use of motor vehicles, regardless of whether each vehicle is specifically described in the policy." Minn. Stat. § 221.141, subd. 1 (2000). The motor carrier must file a certificate of insurance with the state verifying the existence of public-liability insurance in the prescribed amount. *Id.* Farm Bureau filed the required certificates of insurance on Prince's behalf. And on each certificate of insurance, Farm Bureau indicated that its policies provided primary coverage.

Mickman Brothers, by contrast, was not legally required to obtain insurance for Prince's semi-tractor or the trailers. *See*

Minn.Stat. § 65B.42 (1) (2000) (requiring *owners* to maintain automobile-insurance policies). Its coverage was non-mandatory and only incidentally provided. Accordingly, under this court's holding in *U.S. Fire,* the Farm Bureau policies are primary and the Auto Owners policies excess. Because Farm Bureau expressly indicated in its regulatory filings that its policies provided primary coverage, we need not conduct a "closest-to-the-risk" analysis.

**DECISION**

The Farm Bureau policies provide primary coverage for the 1998 and 1999 accidents.

**Affirmed.**