## A97A0543. AMERICAN MOTORISTS INSURANCE COMPANY v. NATIONAL UNION FIRE INSURANCE COMPANY.
### (489 SE2d 36)

POPE, Presiding Judge.

In 1989 two women were assaulted and raped at an apartment complex owned by First Gibraltar Bank. Both women filed premises liability suits against First Gibraltar, and First Gibraltar made a claim for coverage under its commercial general liability policy (Policy 249) issued by defendant/appellant American Motorists Insurance Company. The aggregate limit on Policy 249, which provided coverage only for First Gibraltar's repossessed properties, was $2 million, including defense costs.

The first premises liability case went to trial in February 1993, and the jury returned a verdict of $2.5 million for the victim. At that time the amount remaining available under Policy 249 was less than $1 million. American Motorists notified First Gibraltar's excess umbrella carrier, plaintiff/appellee National Union Fire Insurance Company, that the aggregate policy limits had been reached and tendered to it the remaining policy limits. National Union took over defense of the claims and, a short time later, settled both claims for a combined amount of approximately $3,475,000.

In February 1995 National Union brought suit against American Motorists, contending, inter alia, that it had negligently failed to settle the premises liability cases. In February 1996 National Union amended its complaint to allege that American Motorists was obligated to provide coverage for the premises liability cases under a general liability policy issued by American Motorists to Mac Andrews & Forbes Holdings, Inc., First Gibraltar's parent company (Policy 246). The trial court granted National Union partial summary judgment on this issue, and American Motorists filed the present appeal to this Court.

1. At the outset we note that it is undisputed that First Gibraltar is a named insured under Policy 246 and that the claims here are of the type that would come within the coverage afforded by that policy. There is also no dispute that National Union was the excess/umbrella carrier for both Mac Andrews under Policy 246 and First Gibraltar under Policy 249, and that both are listed on its underlying schedule of insurance. The issue is whether National Union was relieved of its obligation to provide excess coverage to the extent Policy 246 afforded additional insurance to First Gibraltar covering

these claims.

In support of its argument that Policy 246 provided coverage of these claims, National Union points to amendatory policy endorsement 21, which provides as follows: "If other valid and collectible insurance is available to the insured covering a loss also covered by this policy (other than insurance that is specifically in excess of the insurance afforded by this policy), the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance." But American Motorists, quoting portions of endorsement 18 amending the "Coverage territory" provision of the contract, and relying on parol evidence about the intentions of the contracting parties, argues that Policy 246 did not provide coverage for the "geographic location" of First Gibraltar's repossessed properties. National Union argues[1] that endorsement 18 is inapplicable here because it amends only paragraph (c) of the "Coverage territory" provision of the policy, which defines coverage for locations outside the United States.

We agree that endorsement 18 expressly and unambiguously amends only paragraph (c) of the "Coverage territory" provision. " 'An insurance policy is governed by the ordinary rules of contract construction. (Cit.) The hallmark of contract construction is to ascertain the intention of the parties. (Cits.) However, when the terms of a written contract are clear and unambiguous, the court is to look to the contract alone to find the parties' intent.' [Cit.]" *State Farm Fire &c. Co. v. American Hardware &c. Ins. Co.*, 224 Ga. App. 789, 791 (2) (482 SE2d 714) (1997). Under the terms of the insurance contract, Policy 246 provided coverage for the claims once the limits of coverage available under Policy 249 were reached, and parol evidence was inadmissible to vary the terms of the policy to show that Policy 246 and Policy 249 provided mutually exclusive coverage.

2. American Motorists also argues that National Union should be precluded from asserting its claims based on the doctrines of waiver and estoppel. Our Supreme Court has held that the defense of noncoverage can be subject to the doctrine of waiver and estoppel "where the insurer, without reserving its rights, assumes the defense of an action or continues such defense with knowledge, actual or constructive, of noncoverage. . . ." *Prescott's Altama Datsun v. Monarch Ins. Co. &c.*, 253 Ga. 317, 318 (319 SE2d 445) (1984). And this Court has held that " ' "[i]f a liability insurer, with [full] knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, with-

---

[1] National Union made this argument in its motion for reconsideration but not in its original brief to this Court.

out disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage." (Cit.) "The general rule of estoppel is . . . limited by the principle that a liability insurer may avoid the operation of the rule by giving the insured timely notice that, notwithstanding its defense of the action against him, it has not waived the defenses available to it against the insured. Such notice, to be effective, must fairly inform the insured of the insurer's position, and must be timely. . . ." (Cit.)' [Cit.]" *Jacore Systems v. Central Mut. Ins. Co.*, 194 Ga. App. 512, 513 (1) (390 SE2d 876) (1990).

First we note that National Union had at least constructive knowledge of the existence of Policy 246 because it was listed as underlying insurance on the umbrella policy. But National Union argues that it reserved its rights to contest coverage, by letter dated May 24, 1993. That letter provided, in relevant part: "We acknowledge and accept your tender of the remaining limits . . . based on the claim documentation provided in the bordereau, subject to a full Reservation of Rights to explore your financial records with regards to these matters and to preserve any additional actions that we may deem necessary after investigating the circumstances of both the . . . claims."

We do not find this language to be either broad enough or specific enough to preserve National Union's right to contest coverage on the basis asserted here. National Union did not reserve its right to contest coverage on the basis that the claims were payable by other insurance but instead merely reserved its right to review the financial circumstances leading to the exhaustion of the policy limits under Policy 249 and to investigate the underlying claims. Moreover, several weeks prior to sending this letter, National Union sent another letter to its insured in which it specifically stated that it was not raising any "coverage" issues. Cf. *Andrews v. Ga. Farm Bureau Mut. Ins. Co.*, 226 Ga. App. 316 (487 SE2d 3) (1997); *Jacore Systems*, 194 Ga. App. at 513-514 (1) (a) (wherein insured sent reservation of rights letter stating it "does not waive any of its rights or admit any obligation under the policy," and explained further that the reservation was being made because of certain definitions and policy exclusions).

On motion for reconsideration National Union makes a new and additional argument that it was not required to reserve its right to contest coverage. National Union also posits for the first time in its motion for reconsideration that it had a right of contractual as well as equitable subrogation. We find these arguments to be without merit.

National Union cites *Zurich Ins. Co. v. New Amsterdam Cas. Co.*, 117 Ga. App. 426, 429 (3) (160 SE2d 603) (1968) and *Aetna Cas. &c.*

*Co. v. Empire Fire &c. Ins. Co.*, 212 Ga. App. 642, 645 (1) (c) (442 SE2d 778) (1994) in support of its motion for reconsideration argument. In *Zurich*, this Court held that a subrogation provision in an excess insurer's policy subrogating it to all the remedies of its insured entitled it to recover from the primary insurer "in the same manner that its insured would have had, had [the primary insurer], defended the case and paid off the judgment." Id. at 430. Although *Zurich* did not specifically address the reservation of rights issue, in *Aetna*, relying on *Zurich*, we held a subrogation provision entitled the excess insurer to seek indemnification from the primary carrier, and that it was entitled to do so without a reservation of rights. National Union argues that paragraph 10 of the excess policy in this case gives it the same contractual rights. We disagree. That paragraph allows National Union to act "in concert" with the insured in the exercise of the insured's rights of recovery against other persons and entities and sets up a formula for the apportionment of any recovery. Under these circumstances we are not prepared to say, as we did in *Aetna*, that the absence of a reservation of rights was of no consequence, especially in light of the fact that the insured in this case never sought coverage under Policy 246 and would have been required to pay American Motorists a substantial amount in "return dividends" under the terms of that policy had it done so.

*Judgment reversed. Johnson and Blackburn, JJ., concur.*

DECIDED JUNE 18, 1997 —
RECONSIDERATION DENIED JULY 15, 1997 —

*E. Wycliffe Orr, Kristine E. Orr*, for appellant.

*Goldner, Sommers, Scrudder & Bass, Glenn S. Bass, Benjamin D. Ladner*, for appellee.