A98A1187. SOUTHERN GENERAL INSURANCE COMPANY
v. ALFORD et al.
(507 SE2d 179)

ANDREWS, Chief Judge.

Southern General Insurance Company (Southern General) appeals from the trial court's determination that it must pay claims arising out of an accident involving a trailer owned by Southern General's insured, John McLucas. Because we hold that the tractor pulling the trailer was not a "hired automobile" under McLucas's policy, we reverse the judgment of the trial court.

The underlying facts in this case are undisputed. On the day of the accident, Don Harris was driving his own tractor and pulling a

trailer belonging to John McLucas. Harris was hauling timber cut by McLucas for delivery to Mill Creek Timber. Harris had parked the tractor-trailer rig and left it unattended when it rolled into a building, killing Lisa Alford.

Alford's estate and others (Alford) sued McLucas as owner of the trailer involved in the accident. Southern General argued there was no coverage under McLucas's policy. Although it is clear that Harris's tractor was not a vehicle listed as insured under McLucas's policy and also that the policy excluded coverage where tractor and trailer were separately owned, Alford argued that the tractor was covered under the policy as a "hired automobile." The trial court agreed and granted Alford's motion for summary judgment. This appeal followed.

Initially, we note that on appeal from the grant of a motion for summary judgment, this Court conducts a de novo review of the record. Further, the ordinary rules of contract construction govern when construing the provisions of an insurance policy, and this contractual interpretation is a question of law for the court. OCGA § 13-2-1; *American Motorists Ins. Co. v. Nat. Union Fire Ins. Co.*, 227 Ga. App. 321, 322 (489 SE2d 36) (1997).

Turning to the policy at issue, we see that McLucas's policy defined "hired automobiles" as follows: " 'hired automobile' means an automobile not owned by the named insured which is used under contract in behalf of, or loaned to, the named insured, provided such automobile is not owned by or registered in the name of (a) a partner or executive officer of the named insured or (b) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile."

The question then becomes whether Harris's tractor was used "under contract in behalf of, or loaned to" McLucas. There is no argument that Harris "loaned" his tractor to McLucas, and Alford cites us to no authority for his contention that the tractor was being used "under contract in behalf of" McLucas. We find no Georgia case law on point but note that there are numerous federal cases and cases from other states interpreting this type of provision.

One federal case applying Georgia law[1] holds that a truck belonging to a hauler who hauled aluminum dross for the named insured was not a "hired automobile" under the named insured's policy because the hauler was an independent contractor who "contracted to perform certain work for [the named insured] according to his own means and methods, free from control by [the named

---

[1] Decisions of federal courts are not binding authority on this Court, but their reasoning is persuasive. *Macon-Bibb County Hosp. Auth. v. Nat. Treasury Employees Union*, 265 Ga. 557, 558 (458 SE2d 95) (1995).

insured] of the details connected with the performance of the work." *Kelly v. Phoenix Assurance Co. of New York*, 225 FSupp. 562, 565 (2) (D. Md. 1964). Also, in *Canal Ins. Co. v. Liberty Mut. Ins. Co.*, 395 FSupp. 962 (N. D. Ga. 1975), also construing Georgia law, the court found that the logging truck was not a "hired automobile" because there was no separate hiring contract. The agreement between the truck owner and the named insured was a service contract calling for the hauler to supply his own truck and did not provide for hiring the truck. Id. at 974. See also *Sprow v. Hartford Ins. Co.*, 594 F2d 418, 422 (5th Cir. 1979) (for a vehicle to constitute a hired automobile, there must be a separate contract by which the vehicle is leased or hired to the named insured for his exclusive use or control).

In other cases involving a vehicle used to perform hauling services for the named insured, the courts considered whether the named insured was in control of the vehicle (or had a right of control over the vehicle) at the time of the accident or whether the named insured had entered into a written lease agreement with the hauler. 5 ALR4th 636, 644-645. See also *Chicago Ins. Co. v. Farm Bureau Mut. Ins. Co. &c.*, 929 F2d 372 (8th Cir. 1991) (trucking company's truck used to haul grain for named insured not "hired automobile" where trucking company was acting as an independent contractor); *American Cas. Co. of Reading &c. v. Denmark Foods*, 224 F2d 461 (4th Cir. 1955) (truck used to transport cucumbers for named insured was not "hired automobile" when truck owner paid his own driver who was not supervised by the insured); *Indem. Ins. Co. &c. v. Pacific Clay Products Co.*, 91 Cal. Rptr. 452 (1970) (truck used to haul pipe to construction site was not "hired automobile" under named insured's policy because there was no contract and truck was not "loaned" to named insured where the truck remained at all times in the custody of its owner's employee and where even though the named insured was supervising the loading of the truck at the time of the accident, this did not involve control over the truck or possession or custody of the truck); *Sampay v. Morton Salt Co.*, 482 S2d 752 (La. App. 1986) (not a "hired automobile" if there is no separate contract by which the vehicle is hired or leased to the named insured for his exclusive use or control). Compare *Wolverine Ins. Co. v. State Auto. Mut. Ins. Co. &c.*, 415 F2d 1182 (6th Cir. 1969) (even though equipment hauler who provided trailer for hauling was an independent contractor, an employee of the named insured was directing the driver where to place his equipment at the time of the accident, and therefore the named insured was in control of the trailer, thus making it a "hired automobile"); *Bituminous Cas. Corp. v. Travelers Ins. Co.*, 122 FSupp. 197 (Minn. D. C. 1954) (truck furnished and operated by trucking company to haul lime from named insured's quarry was "hired automobile" of named insured because the court determined there was a

joint venture between named insured and trucking company such that the truck was being used under contract in behalf of the named insured); *Continental Cas. Co. v. Zurich Ins. Co.*, 366 P2d 455 (Cal. 1961) (truck hired by independent logging company to haul timber for named insured fit definition of "hired automobile" under policy); *Woodrich Constr. Co. v. Indem. Ins. Co. &c.*, 89 NW2d 412 (Minn. 1958) (hired automobile where trucks and drivers furnished to contractor under contract with subcontractor).

In addition, looking at cases involving independent contractors and a similar definition of "hired automobile," we note that courts have held the vehicle in question was "not a 'hired automobile' because the vehicle [was] being used 'in behalf of' the independent contractor and not the insured, even though it was used in furtherance of the primary contract between the insured and the contractor." (Citations omitted.) *Fisher v. Tyler*, 394 A2d 1199, 1203 (Md. App. 1978).

Here, the record shows that Harris and McLucas had a verbal agreement under which Harris would haul timber for McLucas. Harris hauled timber under this agreement for only three or four days before the accident occurred. In doing the hauling, Harris pulled either McLucas's trailer or his own trailer that he rented from Mill Creek Timber. At McLucas's request, Mill Creek paid Harris directly for the hauling and issued a separate check to McLucas for the cutting and loading. It is clear from the record, and indeed, Alford does not dispute, that Harris was acting as an independent contractor when hauling the logs. He ran his own company, owned his own tractor, paid for oil, gas and maintenance of the tractor, and set his own schedule.

Therefore, applying the case law discussed above, we hold that the tractor owned and driven by Don Harris was not a "hired automobile" covered under John McLucas's insurance policy. Harris was an independent contractor who agreed to haul logs for McLucas. McLucas and Harris had no agreement concerning the hiring of Harris's tractor. Not only did McLucas have no lease agreement with Harris, McLucas was never in control of the tractor and never had a right of control over Harris's tractor. Moreover, Harris was using the tractor for his own benefit not McLucas's. Mill Creek paid Harris for the weight of the timber he hauled and the number of miles he hauled it, and this amount was separate from the amount paid McLucas for cutting and loading the timber.

Therefore, because we hold Harris's tractor does not fit the definition of "hired automobile" under McLucas's policy, there is no coverage under the policy. The trial court erred in granting Alford's motion for summary judgment and in denying Southern General's motion for summary judgment.

*Judgment reversed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED SEPTEMBER 16, 1998 —
RECONSIDERATION DENIED OCTOBER 5, 1998 — 

*Hawkins & Parnell, Michael J. Goldman, Debra L. Dewar*, for appellant.

*Tisinger, Tisinger, Vance & Greer, David H. Tisinger*, for appellees.