## S97G1850. NATIONAL UNION FIRE INSURANCE COMPANY v. AMERICAN MOTORISTS INSURANCE COMPANY.
### (504 SE2d 673)

FLETCHER, Presiding Justice.

We granted certiorari in this case to consider whether an excess insurer is required to reserve its rights against a primary insurer before asserting later that additional primary insurance covers the claim. Because the excess insurer in this case was not seeking to deny coverage under its policy and had no contractual obligation to the primary insurer, we hold that there is no requirement that the excess insurer notify the primary insurer that it was "reserving its rights." Therefore, we reverse the court of appeals.[1]

National Union Fire Insurance Company issued an excess liability policy to its insured First Gibraltar. American Motorists Insurance Company provided primary coverage to First Gibraltar under two policies, policy 246 and policy 249. Policy 246 was a "loss-sensitive" policy, which required the insured to make additional premium payments based upon claims experience. When two plaintiffs brought separate premise liability suits against First Gibraltar, American Motorists provided a defense in both actions under policy 249, but did not apply policy 246 to the claims. After the first suit resulted in a $2.5 million judgment, which was in excess of the limits of policy 249, American Motorists tendered the limits to National Union. National Union accepted the tender, assumed the defense of

---

[1] *American Motorists Ins. Co. v. Nat'l Union Fire Ins. Co.,* 227 Ga. App. 321 (489 SE2d 36) (1997).

both suits, and settled them for approximately $3.4 million.

National Union subsequently sued American Motorists contending, in part, that policy 246 provided additional coverage for the claims. The trial court granted National Union's motion for partial summary judgment on the issue of whether policy 246 covered the claims. The court of appeals affirmed that holding,[2] but nevertheless held that National Union had waived or was estopped to recover because it failed to adequately reserve its rights to deny coverage. The court of appeals' ruling thus barred National Union's claims.

1. American Motorists characterizes National Union's allegations as a denial of coverage and contends that the claim must fail because National Union failed to reserve its right to deny coverage.

(a) As an initial matter, the labeling of National Union's claim as a denial of coverage is a mischaracterization. Courts have long recognized, either as subrogation or indemnity, the right of an insurance company, which pays a claim, to seek reimbursement from another insurer that should have satisfied the claim.[3] Some courts have also permitted direct actions between insurers for reimbursement.[4]

Regardless of the label attached to the claim, the fact that the insurer is attempting to recoup its outlay does not mean that the insurer is denying coverage. The parties agree that National Union assumed the defense and settled both lawsuits by paying approximately $3.4 million under its policy. National Union did not rely on any provision or exclusion in its policy to refuse American Motorists' tender. Because National Union was not seeking to deny coverage, there was no requirement that it reserve its rights to deny coverage.

(b) Even if National Union were denying coverage, the failure to reserve the right to do so would not preclude its claim against American Motorists. A "reservation of rights" typically refers to an insurer's notice to its insured that it will provide a defense, but may litigate and ultimately deny coverage if the insured is found liable.[5] In this case, National Union's contract was with First Gibraltar. Thus, National Union's "right to deny coverage" flows only to First Gibraltar. Any reservation of that right would have to be directed to First

---

[2] The court of appeals' holding on the scope of coverage under policy 246 is not at issue on certiorari.

[3] See *Aetna Cas. & Sur. Co. v. Empire Fire & Marine Ins. Co.*, 212 Ga. App. 642, 645 (442 SE2d 778) (1994); see generally Allan D. Windt, *Insurance Claims and Disputes* §10.11 (1995); John A. Appleman and Jean Appleman, 8A *Insurance Law and Practice* 4921 (1981).

[4] See, e.g., *Hartford Accident & Indem. Co. v. Michigan Mut. Ins. Co.*, 463 N.E.2d 608 (N.Y. 1984); *Colonial Ins. Co. v. Assuranceforeningen Skuld*, 588 So.2d 1009, 1010 (Fla. Dist. Ct. App. 1991); *American Centennial Ins. Co. v. American Home Assurance Co.*, 729 F. Supp. 1228, 1232 (N.D. Ill. 1990) (applying Illinois law); *Western World Ins. Co. v. Allstate Ins. Co.*, 376 A.2d 177, 180 (N.J. Super. Ct. App. Div. 1977).

[5] See generally Frank E. Jenkins & Wallace Miller, III, *Georgia Automobile Liability Insurance Law*, § 14-3 (1997).

Gibraltar and American Motorists may not complain about National Union's failure to provide such notice.[6]

(c) The substance of the court of appeals' holding imposes a requirement that an excess insurer notify a primary insurer of its intention to seek reimbursement before accepting a tender of the defense of the underlying action. Since there is no contractual relationship between National Union and American Motorists, any notice requirement must be based on public policy grounds.

The public policy interest in situations where insurance companies are arguing over which should cover a claim rests with neither insurer, but with the insured. By requiring an excess insurer to investigate and notify a primary carrier of any claim for subrogation, we would be placing the insurer's interest ahead of the insured because the excess insurer would be required to delay action until it completed an investigation. We conclude that the better policy is to encourage insurers to promptly protect their insureds' interests and to hold disputes among themselves in abeyance. Therefore, we decline to impose a notice requirement.

2. American Motorists also asserts arguments beyond the scope of the question posed on certiorari. American Motorists raised these issues in the court of appeals and contend that they provide independent bases for precluding National Union's claims, but the court of appeals did not address them. Since this action has been on appeal for two years, we will consider these issues in the interest of judicial economy.[7]

(a) American Motorists argues that National Union is not entitled to subrogation because American Motorists would have a complete defense to a claim by First Gibraltar for additional coverage under policy 246 since First Gibraltar disclaimed coverage under policy 246. Therefore, National Union's subrogation claim would be precluded because its rights are dependent upon First Gibraltar's rights.[8] The trial court denied American Motorists's motion for summary judgment on this claim. After a review of the record, we conclude that genuine issues of material fact exist regarding whether American Motorists would have a complete defense to a claim by First Gibraltar. Therefore, we cannot say as a matter of law that American Motorists is entitled to summary judgment on National Union's subrogation claim, and the trial court did not err in denying

---

[6] *Aetna Cas.*, 212 Ga. App. at 645 (excess insurer's defense of insured without a reservation of rights does not bar suit for indemnity against primary insurer).

[7] See *Beauchamp v. Knight*, 261 Ga. 608, 610, n.1 (409 SE2d 208) (1991).

[8] See *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 262 (356 SE2d 877) (1987) (an insurer that seeks subrogation is subject to any defenses that might have been asserted against its insured).

the motion for summary judgment.

Additionally, even if First Gibraltar's actions in the underlying litigation would bar National Union's subrogation claim, National Union has asserted a "direct action" claim. A direct action would allow National Union to pursue its claims without being subject to defenses American Motorists could assert against First Gibraltar. National Union argues that such a claim is permissible as a cause of action for intentional misrepresentation of material fact.[9] Additionally, other courts have allowed direct actions between insurers in various circumstances.[10] However, this court has not addressed such a direct action between insurers[11] and the trial court did not address this claim. Therefore, this issue remains for resolution in the trial court.

(b) American Motorists also contends that National Union is not entitled to seek subrogation because it was a volunteer.[12] According to this argument, National Union's policy did not provide coverage until the exhaustion of the primary insurance. Therefore, if policy 246 covered the claims, the primary insurance was not exhausted and National Union was a volunteer in settling the claims. This argument ignores that National Union made no payment until after American Motorists represented that the primary coverage was exhausted. We refuse to conclude that National Union was a volunteer, and thus relieve American Motorists of all liability, for accepting the tender that American Motorists initiated. This holding is consistent with the majority view that is skeptical of the "volunteer" argument and holds that an insurer will not be deemed a volunteer when it makes a payment to or on behalf of an insured in good faith and under a reasonable belief that the contract required the payment.[13]

*Judgment reversed. All the Justices concur.*

DECIDED SEPTEMBER 21, 1998.

---

[9] See *Robert & Company Assoc. v. Rhodes-Haverty Partnership,* 250 Ga. 680 (300 SE2d 503) (1983) (allowing cause of action for misrepresentation despite lack of privity between parties).

[10] See cases cited, supra in n.4.

[11] See *Home Ins. Co. v. North River Ins. Co.,* 192 Ga. App. 551, 556 (385 SE2d 736) (1989) (expressing no opinion on merits of direct action between excess insurer and primary insurer based on negligent misrepresentation).

[12] See *Allianz Ins. Co. v. State Farm Fire & Cas. Co.,* 214 Ga. App. 666, 667 (449 SE2d 5) (1994); Windt, *Insurance Claims and Disputes,* §§ 10.10-10.13.

[13] Windt, *Insurance Claims and Disputes,* § 10.10; Appleman, 8A *Insurance Law and Practice,* § 4922.

*Goldner, Sommers, Scrudder & Bass, Glenn S. Bass, Benjamin D. Ladner,* for appellant.
*E. Wycliffe Orr,* for appellee.