A01A1524. MOTORS INSURANCE COMPANY v. AUTO-OWNERS INSURANCE COMPANY.
(555 SE2d 37)

ANDREWS, Presiding Judge.
The primary issue in this appeal involves construction of the automobile insurance provision set forth in OCGA § 33-34-3 (d) which provides in general that, where a car owned by a car dealer engaged in the business of selling new or used cars is involved in an accident while being test-driven by a person who is neither the

---

dealer-owner nor an employee of the dealer-owner, the test driver's private automobile policy affords primary coverage and the dealer-owner's automobile policy affords excess coverage. It is undisputed that the car at issue was owned by a dealer engaged in the retail sale of cars and that the car was involved in an accident while it was being test-driven by an employee of the dealer who wished to purchase the car.[1] Motors Insurance Company, which provided insurance for the dealer's automobile inventory, contends that, even though an employee of the dealer was test-driving the car when the accident occurred, OCGA § 33-34-3 (d) should be construed to impose primary coverage on the employee's private automobile insurer, Auto-Owners Insurance Company, because the employee was not acting in the course of his employment, but was test-driving the car on a personal mission as a customer of the dealer.

1. The statute at issue provides as follows:

> Each policy of liability insurance issued in this state providing coverage to motor vehicles owned by a person, firm, or corporation engaged in the business of selling at retail new and used motor vehicles shall provide that, when an accident involves the operation of a motor vehicle by a person who is neither the owner of the vehicle involved in the accident nor an employee of the owner and the operator of the motor vehicle is an insured under a complying policy other than the complying policy insuring the motor vehicle involved in the accident, primary coverage as to all coverages provided in the policy under which the operator is an insured shall be afforded by the liability policy insuring the said operator and any liability policy under which the owner is an insured shall afford excess coverages. If the liability policy under which the owner is an insured and which affords excess coverage contains a provision which eliminates such excess coverage based on the existence of coverage provided in the operator's liability policy, such provision of the owner's liability policy shall be void.

OCGA § 33-34-3 (d).

By making the driver's insurance primary while driving a car owned by the dealer under the terms of the statute, OCGA § 33-34-3 (d) shifts primary coverage from the dealer's insurer in derogation of the general rule that automobile insurance "follows the car." *Indus.*

---

[1] Although the employee was on a medical leave of absence from his normal work duties, he received a weekly paycheck from the dealer and remained employed by the dealer at the time of the accident.

*Indem. Co. v. Walck*, 192 Ga. App. 754, 755-756 (386 SE2d 521) (1989). Because in the present case the dealer's car was being test-driven at the time of the accident by an employee of the dealer, the plain language of the statute shows that it did not operate to shift primary coverage to the driver's private automobile insurer. Regardless of whether the dealer's employee was acting within or outside the scope of employment, nothing in the statute could be construed to trigger its operation where the dealer's car was being driven by the dealer's employee. *Standard Guaranty Ins. Co. v. Grange Mut. Cas. Co.*, 182 Ga. App. 842, 844 (357 SE2d 295) (1987). "[W]here the language of an Act is plain and unequivocal, judicial construction is not only unnecessary but is forbidden." (Citations and punctuation omitted.) Id. at 843. Accordingly, under the general rule that automobile insurance "follows the car," primary coverage for claims arising from the accident was afforded by the dealer's insurer, Motors Insurance, and excess coverage was afforded by the driver's insurer, Auto-Owners Insurance. *Indus. Indem. Co.*, 192 Ga. App. at 755-756; *Zurich Ins. Co. v. New Amsterdam Cas. Co.*, 117 Ga. App. 426, 428 (160 SE2d 603) (1968).

2. Because primary coverage for claims arising from the accident was afforded by Motors Insurance, the trial court correctly granted summary judgment in favor of the excess insurer, Auto-Owners Insurance, on its suit for indemnification against Motors Insurance for amounts paid by Auto-Owners Insurance in settlement of the claims arising from the accident.

As a result of the accident, personal injury and property damage claims were made against the employee-driver. The record shows that Motors Insurance was notified of the claims, denied coverage under its policy, and refused to defend the claims despite being the primary insurer. Instead, Motors Insurance asserted that Auto-Owners Insurance was the primary insurer and was obligated to defend and adjust the claims. As a consequence, the excess insurer, Auto-Owners Insurance, defended the claims against its insured, paid settlement amounts on behalf of its insured in the amount of $10,764, and sued Motors Insurance for indemnification to collect the sum paid in settlement.

As the primary insurer on the claims, Motors Insurance was obligated to indemnify the excess insurer, Auto-Owners Insurance, for sums (up to the Motors Insurance policy limit)[2] paid by Auto-Owners Insurance in settlement of the claims. *Aetna Cas. &c. Co. v. Empire Fire &c. Ins. Co.*, 212 Ga. App. 642, 646 (442 SE2d 778)

---

[2] Motors Insurance does not claim that the settlement amount was in excess of its policy limit.

(1994). There was no requirement that Auto-Owners Insurance notify Motors Insurance of its intention to seek indemnification before accepting a tender of the defense of the claims. *Nat. Union Fire Ins. Co. v. American Motorists Ins. Co.*, 269 Ga. 768, 770 (504 SE2d 673) (1998). Motors Insurance was notified of the claims and was aware of the facts which obligated it to provide coverage and defend the claims as the primary insurer. When Motors Insurance refused to do so and asserted that Auto-Owners Insurance was obligated to defend and adjust the claims, it did so at its peril. 8A Appleman, Insurance Law & Practice, § 4923, p. 559. Under these circumstances, the excess insurer, Auto-Owners Insurance, was entitled to make a reasonable settlement of the claims without giving notice or demanding that Motors Insurance participate in the settlement. On these facts, Motors Insurance was estopped to deny the validity of a settlement made by Auto-Owners Insurance in good faith, unless the amount paid was so excessive as to show evidence of bad faith, or there was other evidence that the settlement was made in bad faith. *Aetna Cas. &c. Co.*, 212 Ga. App. at 646; *Ga. Southern &c. R. Co. v. U. S. Cas. Co.*, 97 Ga. App. 242, 244 (102 SE2d 500) (1958).[3] Motors Insurance made no claim that the amount of the settlement or any other fact in the case was evidence that Auto-Owners Insurance acted in bad faith.

Finally, we find no merit in Motors Insurance's contention that Auto-Owners Insurance was not entitled to indemnification because it paid the settlement as a volunteer pursuant to OCGA § 13-1-13. As the excess insurer, Auto-Owners Insurance had a duty to defend the claims against its insured after the primary insurer denied coverage and refused to defend. *Zurich Ins. Co.,* 117 Ga. App. at 428. Having paid the settlement pursuant to this duty, we decline to find that Auto-Owners Insurance acted as a volunteer. *Nat. Union Fire Ins. Co.*, 269 Ga. at 771; *Aetna Cas. &c. Co.*, 212 Ga. App. at 645.

*Judgment affirmed. Eldridge and Miller, JJ., concur.*

DECIDED SEPTEMBER 28, 2001.

*Anderson, Walker & Reichert, Robert A. B. Reichert, John B. Critchfield*, for appellant.

---

[3] Although estopped to deny the validity of a good faith settlement, Motors Insurance was still entitled to assert that its policy did not provide coverage for the claims. *McCraney v. Fire & Cas. Ins. Co.*, 182 Ga. App. 895, 896 (357 SE2d 327) (1987); *Colonial Oil Indus. v. Underwriters Subscribing to Policy Nos. &c.*, 268 Ga. 561, 563 (491 SE2d 337) (1997).

*Watson, Spence, Lowe & Chambless, John M. Stephenson*, for appellee.

