A09A0454. McGREGOR et al. v. COLUMBIA NATIONAL
INSURANCE COMPANY.
(680 SE2d 559)

DOYLE, Judge.

This case arises out of a federal lawsuit filed by William J. McGregor, Cheryl McGregor, Ralph Destito, Marie Destito, Joseph J. Destito, Philip Dipaolo III, Linda W. Dipaolo, Judy Watkins, Joseph Hutchings, Judy Hutchings, Robert Morrison, James Matthew, Frank Drozd, Pamela Drozd, Thomas Wescott, Joanne Wescott, and Bernard J. Kunes II (collectively "McGregor") against J. Scott Eskind, Lorus Investments, Inc., and Capital Management Fund, L.P. (collectively "Eskind"). McGregor, Eskind, and Eskind's insurer, Columbia National Insurance Company ("Columbia"), entered into a settlement agreement, and McGregor subsequently filed suit to recover the amount of the judgment against Columbia. The parties

filed cross-motions for summary judgment, and the trial court ruled in favor of Columbia, finding that the relevant policies did not provide coverage for McGregor's claims. McGregor appeals from this order, and we affirm, finding no error.

A trial court properly grants summary judgment where the evidence, viewed in the light most favorable to the nonmovant, demonstrates that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] When reviewing the grant or denial of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence.[2]

So viewed, the evidence shows that McGregor invested approximately $2.2 million with Eskind. Thereafter, on July 10, 2003, McGregor filed suit against Eskind in federal court, asserting various tort claims including, inter alia, negligent misrepresentation, fraudulent misconduct, and false advertising.[3]

Eskind's company, Capital Management Fund, held two separate commercial general liability insurance policies issued by Columbia, each with limits of $1 million. The policies provided that Columbia would "pay those sums that [Capital] becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury,'" and that Columbia would "have no duty to defend the insured against any 'suit' seeking damages . . . to which this insurance does not apply." In an October 17, 2003 letter, Columbia formally declined coverage and defense with respect to the claims alleged in McGregor's original complaint, contending that none of the claims was covered by the policies. Thereafter, on November 17, 2003, McGregor amended the federal complaint to add a claim that Eskind "wrongfully misappropriated advertising ideas and styles of doing business in his advertising." Based on the new claim asserted in the amended complaint, Columbia accepted the defense of Eskind on November 24, 2003, specifically reserving its rights to disclaim coverage. Columbia then

---

[1] See OCGA § 9-11-56 (c).

[2] See *Perry v. State Farm Fire &c. Co.*, 297 Ga. App. 9 (676 SE2d 376) (2008).

[3] On October 21, 2003, J. Scott Eskind pleaded guilty to two counts of federal securities violations and misappropriation of investor funds, including

> employing and causing to be employed a device and a scheme and artifice to defraud and for obtaining money and property by means of untrue statements of material facts, and by engaging in and causing transactions, practices, and a course of business, which operated and would operate as a fraud and deceit upon a purchaser, all in connection with the offer and sale of securities . . . by falsifying his professional background . . . by failing to disclose that he had been suspended from the New York Stock Exchange from employment . . . by providing investors with fictitious account statements, [and] by failing to disclose that stolen, non-investor funds were deposited into the bank account of Capital Management Fund.

Eskind was sentenced to 57 months in prison for each count, to be served concurrently.

filed a declaratory judgment action against Eskind in superior court, disputing coverage under the policies for McGregor's claims.

Because Eskind could not bear the litigation costs of Columbia's declaratory judgment action and because Eskind's only sources of funds to satisfy any judgment obtained by McGregor against him were the proceeds of the Columbia insurance policies, McGregor, Eskind, and Columbia entered into a settlement agreement (which was reduced to a consent judgment) on August 2, 2006, in the amount of $6.5 million, plus post-judgment interest of 18 percent per year. The agreement specifically provided that McGregor recovered under his claims for negligent misrepresentation; attorney fees and costs; false, misleading, and deceptive advertising; and misappropriation of advertising ideas and style of doing business pursuant to the federal Lanham Act. Under the agreement, Columbia agreed: to dismiss the state declaratory judgment action; that McGregor could sue Columbia directly to recover on the consent judgment; and that the settlement would not enhance its defense to a subsequent action to recover the judgment. However, Columbia expressly "reserve[d] all rights to contest coverage with respect to all counts upon which judgment is entered." In the agreement, Eskind released Columbia from any claims for punitive damages and bad faith, and Eskind and McGregor agreed to limit their claims against Columbia to the limits of all available coverages provided by the liability policies.

Thus, as contemplated by the settlement agreement, McGregor filed the instant action against Columbia on August 11, 2006, to satisfy the consent judgment (or portions thereof). The parties filed cross-motions for summary judgment, and the trial court ruled in favor of Columbia. In a thorough and well-reasoned oral announcement of its ruling, the trial court determined that Columbia's initial refusal to defend Eskind in the federal action did not bar Columbia from contesting coverage, and the court concluded that the liability policies at issue did not provide coverage for McGregor's claims against Eskind. This appeal followed.

1. McGregor contends that "[t]he trial court erred in allowing Columbia the opportunity to contest the liability" of Eskind and McGregor's "right to recover the [$6.2 million judgment]." McGregor specifically argues that "[t]he trial court erroneously allowed Columbia to contest the standing of [McGregor] to obtain a recovery pursuant to the Lanham Act in the [federal] action as well as the proven element of proximate causation in the [t]ort [a]ction."

McGregor's argument is without merit. McGregor improperly attempts to re-characterize the trial court's order as a ruling on whether Eskind was liable to McGregor. Instead, the trial court simply addressed the question of whether Eskind's liability was covered by the Columbia policies and properly rejected McGregor's

argument that Columbia waived its right to contest coverage by initially refusing to defend Eskind.[4]

Georgia law is clear that by refusing to defend its insured in litigation, an insurer "loses all opportunity to contest the negligence of the insured or the injured person's right to recover, and exposes itself to a charge of and penalty for breach of contract."[5] By electing not to defend its insured, however, an insurer *does not* "waive[ ] either its right or its opportunity to contest [a third party's] entitlement to a recovery under its polic[ies] covering [the insured],"[6] because the "question of whether the polic[ies] provide[ ] coverage for the claim[s] is separate from the legal consequences of an insurer's refusal to indemnify or defend."[7] As the Supreme Court of Georgia has explained, when an insurer

> breaches the contract by wrongfully refusing to provide a defense, the insured is entitled to receive only what it is owed under the contract — the cost of defense. The breach of the duty to defend, however, should not enlarge indemnity coverage beyond the parties' contract. This rule . . . recognizes that the duty to defend and the duty to pay are independent obligations.[8]

Thus, the trial court did not err in considering Columbia's policy defenses to coverage, notwithstanding its refusal to provide Eskind a defense to McGregor's original complaint.[9]

2. McGregor further argues that the trial court erred in concluding that the general liability policies at issue did not provide coverage for his claims. We disagree.

(a) In the amended complaint, McGregor alleged that Eskind, inter alia, misappropriated McGregor's investments and disseminated advertising and promotional materials to him that were false and/or misleading in multiple respects.[10] Specifically, with regard to

---

[4] We note that the parties do not address whether Columbia's initial refusal to defend was authorized, and thus, we do not address the issue in this appeal.

[5] *LaSalle Nat. Ins. Co. v. Popham*, 125 Ga. App. 724, 729 (1) (188 SE2d 870) (1972).

[6] *McCraney v. Fire &c. Ins. Co.*, 182 Ga. App. 895, 896 (357 SE2d 327) (1987). See *Morgan v. Guaranty Nat. Cos.*, 268 Ga. 343, 345 (489 SE2d 803) (1997).

[7] *Southern Guaranty Ins. Co. v. Dowse*, 278 Ga. 674, 677 (2) (605 SE2d 27) (2004).

[8] (Footnote omitted.) *Colonial Oil Indus. v. Underwriters Subscribing &c.*, 268 Ga. 561, 563 (4) (491 SE2d 337) (1997).

[9] See *Southern Guaranty Ins. Co.*, 278 Ga. at 677 (2); *Morgan*, 268 Ga. at 345; *Colonial Oil Indus.*, 268 Ga. at 563 (4); *McCraney*, 182 Ga. App. at 896.

[10] For example, McGregor alleged that the advertising and promotional materials contained false representations regarding Eskind's specific employment history with Lehman Brothers Holdings, Inc. and the fact that the Eskind parties were represented by Skadden, Arps, Slate, Meagher & Flom LLP in New York and Weinstock & Scavo, P.C. in Atlanta.

Count XXVII — their claim for "misappropriation of advertising ideas and style of doing business" — McGregor alleged that Eskind

> wrongfully misappropriated advertising ideas and style of doing business in [his] advertising, such advertising activity is causally connected to the advertising injury as alleged herein by [McGregor], and [McGregor has] been damaged by virtue of [Eskind's] misappropriation of advertising ideas and style of doing business.

McGregor argues that in the agreement entered into by the parties, Columbia admitted the claims alleged in Count XXVII. Therefore, McGregor argues, "the [consent judgment] is a judicial decree that Columbia's insureds are liable to [McGregor] for misappropriation of advertising ideas and style of doing business, the same as if the [j]udgment [was] rendered on a jury verdict," and thus, the only relevant question is whether Eskind's actions, as admitted by Columbia, are covered under the policies.

In the parties' agreement, Columbia agreed that the trial court should "enter judgment" as to, inter alia, Count XXVII. However, the agreement specifically provided that

> Columbia is not agreeing to be bound by the designations of Counts on which judgment is entered and reserves all rights to contest coverage with respect to all counts upon which judgment is entered. *Specifically, by consenting to judgment on Count XXVII for misappropriation of advertising ideas and style of doing business pursuant to the [f]ederal Lanham Act, the [p]arties shall not be entitled to argue that the [j]udgment as entered or this [a]greement are admissions by Columbia or otherwise evidence coverage for "advertising injury" as that phrase is defined in the Columbia policies.*[11]

Given this language, we find McGregor's argument that Columbia has effectively admitted *coverage* for the claims set forth in Count XXVII — or any other of the claims it agreed to judgment for — to be without merit.

Moreover, McGregor's argument that he is somehow afforded a cause of action under the Lanham Act[12] is irrelevant to this appeal, as such a determination has no bearing on whether McGregor's injuries are covered by the Columbia policies. Even if Eskind's

---

[11] (Emphasis supplied.)

[12] 15 USC § 1051 et seq. (creating a private cause of action for trademark infringements and injuries for false statements made in advertising).

liability for an injury under the Lanham Act *was* conclusively established by the agreement, it does not follow that such an injury is covered by the policies. For the same reason, we also reject McGregor's argument that because the agreement conclusively established causation, Columbia was precluded from asserting its coverage defenses. Even if the agreement sufficiently established Eskind's liability, it does not necessarily follow that the injury was contemplated by the insurance policies as a covered event.

(b) The next issue becomes, therefore, whether the trial court erred in concluding that the policies at issue did not provide coverage for McGregor's claims.

> Construction of an insurance policy is governed by the ordinary rules of contract construction, and when the terms of a written contract are clear and unambiguous, the court is to look to the contract alone to find the parties' intent. However, if a provision of an insurance contract is susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable, it is ambiguous, and the statutory rules of contract construction will be applied. The proper construction of a contract, and whether the contract is ambiguous, are questions of law for the court to decide.[13]

The policies here issued by Columbia provided that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury' to which this insurance applies." The policies further provide, in relevant part, that the insurance applies to " '[a]dvertising injury' caused by an offense committed in the course of advertising your goods, products[,] or services." The policies define "advertising injury" as an "injury arising out of one or more of the following offenses":

> a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products[,] or services;
> b. Oral or written publication of material that violates a person's right of privacy;
> c. Misappropriation of advertising ideas or style of doing business; or

---

[13] (Citations and punctuation omitted.) *Ins. Co. &c. of Pennslyvania v. APAC-Southeast*, 297 Ga. App. 553, 557 (677 SE2d 734) (2009).

d. Infringement of copyright, title[,] or slogan.

McGregor argues that "c" and "d" apply here and provide coverage for their claims against Eskind. We do not agree. Essentially, McGregor alleges that Eskind made false and misleading statements in his advertising and promotional materials. Even assuming that the claims are based in fact, such actions simply do not constitute "misappropriation of advertising ideas or style of doing business" or "infringement of copyright, title[,] or slogan" as intended under the terms of the policy. Instead, they are more akin to false advertising — a claim that McGregor also alleged — a claim that is not covered by the Columbia policies at issue.[14]

Further, as recognized by the trial court, the policies at issue provide no coverage for McGregor's claims because McGregor does not allege that Eskind misappropriated *his* advertising ideas or style of doing business or that Eskind infringed McGregor's copyright, name, or style.[15] And we are unpersuaded by McGregor's argument that the trial court improperly added language to the policies to reach this conclusion. To the extent Eskind misappropriated advertising ideas or a style of doing business from the entities included in the advertising and promotional materials, McGregor does not have standing to assert claims on behalf of such entities.

Moreover, as the trial court properly concluded, there was no coverage under the Columbia policies because there was no causal connection between the purported advertising activity and McGregor's injuries.[16] The advertising materials were only tangentially connected to McGregor's injuries, which were actually caused by Eskind's misappropriation of his investments.[17] Thus, the trial court properly concluded that the relevant policies issued by Columbia

[14] Compare *State Farm Fire &c. Co. v. Steinberg*, 393 F3d 1226, 1233-1234 (II) (B) (11th Cir. 2004) (summarizing various federal cases addressing whether allegations of particular facts constitute "misappropriation of advertising ideas or style of doing business" or infringement of a trademark, copyright or title for purposes of coverage analysis).

[15] See, e.g., *Granite State Ins. Co. v. Aamco Transmissions*, 57 F3d 316, 320-321 (II) (3d Cir. 1995) ("'advertising injury' policy covers injuries to competitors, not consumers); *Standard Fire Ins. Co. v. Peoples Church of Fresno*, 985 F2d 446, 450 (I) (9th Cir. 1993) (discussing a claim by consumers for misrepresentation as a species of unfair competition, "[a]dvertising injury . . . is injury inflicted on a competitor and not simply on a customer").

[16] See *Elan Pharmaceutical Research Corp. v. Employers Ins. of Wausau*, 144 F3d 1372, 1375 (I) (11th Cir. 1998) ("[t]o fall within the coverage of the insurance policies, . . . there must have been some causal connection between the advertising injury and the advertising activity"); *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F3d 1179, 1191-1192 (I) (B) (11th Cir. 2002) (" 'the injury for which coverage is sought must be caused by the advertising itself' "); *Robert Bowden, Inc. v. Aetna Cas. & Surety Co.*, 977 FSupp. 1475, 1480-1481 (N.D. Ga. 1997) (holding that there must be a causal connection between an insured's advertising and an alleged injury to trigger coverage for an advertising injury).

[17] See *Payne v. Twiggs County School Dist.*, 269 Ga. 361, 363-364 (2) (496 SE2d 690) (1998); *Robert Bowden, Inc.*, 977 FSupp. at 1481.

afforded no coverage for McGregor's claims against Eskind.

(c) Columbia also argues that specific exclusions in the policies at issue apply and preclude coverage for McGregor's claims.[18] In light of our holding in Division 2 (b), we need not address these arguments.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED JUNE 23, 2009 ▮

*Lawrence E. Newlin, Jeffrey N. Schwartz*, for appellants.

*Hicks, Casey & Foster, Richard C. Foster, Andrea Alexander*, for appellee.

---

[18] Specifically, Columbia argues that the "knowledge-of-falsity" exclusion, the professional services exclusion, and the "first publication" exclusion defeat coverage.