A09A2203. NORTHLAND INSURANCE COMPANY et al. v. AMERICAN HOME ASSURANCE COMPANY et al.

(689 SE2d 87)

BLACKBURN, Presiding Judge.

In this insurance coverage action arising out of a tractor-trailer accident, Wal-Mart Stores, Inc. sought a declaratory judgment against Lexington Insurance Company ("Lexington"), Northland Insurance Company ("Northland") and American Home Assurance Company ("American Home"), in order to determine the parties' obligations with regard to the settlement of claims related to the underlying accident. Northland appeals a grant of summary judgment in favor of American Home as to Northland's cross-claim for reimbursement, contending that the trial court erred by finding that American Home's and Northland's policies did not obligate them to contribute to the settlement on a pro-rata basis. For the reasons set forth below, we reverse the grant of summary judgment in favor of American Home.

Summary judgment is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a

matter of law. OCGA § 9-11-56 (c); *Britt v. Kelly & Picerne, Inc.*[1] "On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant." (Punctuation omitted.) *McCall v. Couture.*[2]

So construed, the record shows that in late March or early April 2001, Wal-Mart hired Pro-Carriers, Inc. (a trucking company) to transport a loaded trailer from Alabama to Florida. In turn, Pro-Carriers leased a tractor owned by Henry Williams to haul Wal-Mart's trailer, and Williams was hired to drive the tractor. On April 13, 2001, while hauling the Wal-Mart trailer through Georgia on his way to Florida, Williams was involved in a serious multi-vehicle accident. Subsequently, the injured parties filed tort claims, seeking substantial damages against Pro-Carriers, Wal-Mart, and Williams.

Pro-Carriers had a primary insurance policy issued by Underwriters Insurance Company ("Underwriters") with limits of $1 million per occurrence. In addition, it had an excess policy issued by Lexington with similar limits of $1 million per occurrence.

Wal-Mart was insured by an American Home policy with limits of $10 million per occurrence. The policy also contained a $5 million deductible, pursuant to a "Deductible Coverage Endorsement," which provided in part: "This Endorsement applies solely between you [Wal-Mart] and us [American Home]. It does not affect the rights of others under this policy." The Deductible Coverage Endorsement further provided the following payment and deductible conditions:

> A. We will pay all sums that we become obligated to pay up to our Limit of Insurance under the policy to which this endorsement applies. Our Limit of Insurance includes, and shall not apply in addition to, any sum that you must reimburse us for damages, benefits or Medical Payments that we have paid.
>
> B. You must reimburse us up to the Deductible Limit(s) shown in the Schedule for any amounts we have so paid as damages, benefits or Medical Payments. The Deductible will apply to each "occurrence," "accident," offense, claim or other basis as shown in the Schedule, regardless of the number of persons or organizations who sustain damages because of an "occurrence" or "accident" or offense or other basis shown in the Schedule.

---

[1] *Britt v. Kelly & Picerne, Inc.*, 258 Ga. App. 843, 843 (575 SE2d 732) (2002).
[2] *McCall v. Couture*, 293 Ga. App. 305, 305 (666 SE2d 637) (2008).

Additionally, Section IV., B., 5. of the American Home policy, which was titled "Other Insurance," provided in part:

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is: (1) Excess while it is connected to a motor vehicle you do not own. (2) Primary while it is connected to a covered "auto" you own. . . .

d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage, Forms and policies covering on the same basis.

Williams was insured by a Northland policy with limits of $1 million per occurrence. Section V., B., 5. of the Northland policy included a paragraph titled "Other Insurance" and provided in part:

a. This Coverage Form's Liability Coverage is primary for any covered "auto" while hired or borrowed by you and used exclusively in your business as a "trucker" and pursuant to operating rights granted to you by a public authority. This Coverage Form's Liability Coverage is excess over any other collectible insurance for any covered "auto" while hired or borrowed from you by another "trucker." However, while a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Liability Coverage is: (1) On the same basis, primary or excess, as for the power unit if the power unit is a covered "auto." (2) Excess if the power unit is not a covered "auto" . . . .

c. Except as provided in Paragraphs a. and b. above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own. . . .

f. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

Eventually, the three defendants and their insurers settled the injured parties' underlying claims for $4,534,000, while reserving all their respective rights under the policies to contribution, indemnity, and/or subrogation against each other. Underwriters paid $1 million toward the settlement, pursuant to its policy issued to Pro-Carriers. Northland also paid $1 million toward the settlement, and Wal-Mart paid $2,534,000 directly in light of the fact that its share did not meet its deductible under the American Home policy.

After the settlement of the underlying claims, Wal-Mart filed suit against Lexington, Northland, and American Home, seeking subrogation and contribution from Lexington and a declaratory judgment regarding all the parties' rights and obligations under the various insurance policies at issue. All three insurers filed answers. In addition, Northland filed a cross-claim against American Home, contending that based on the language of the "Other Insurance" provisions in their respective policies, Northland and American Home both provided excess coverage, as opposed to primary coverage, for this accident. Each insurer therefore, was obligated to contribute to the settlement of the underlying claims on a pro-rata basis proportional to the limits of their respective policies in relation to the total of all available insurance. Given the fact that Northland's policy limit was $1 million and American Home's limit was $10 million, the total coverage limit for the two as excess insurers was $11 million. Northland therefore claimed that it was only obligated to contribute one eleventh of the settlement ($321,273 of the $3,534,000 paid by it and American Home, as excess insurers) and that American Home was obligated to contribute ten elevenths ($3,212,727) of the settlement. Thus, because Northland contributed more than its pro-rata share, it claimed that American Home was obligated to reimburse it for the difference between what it paid and what it was obligated to pay ($1,000,000 - $321,273 = $678,727).

At the close of discovery, all the parties filed motions for summary judgment. After a hearing on those motions, the trial court granted summary judgment in favor of Lexington as to Wal-Mart's claim that Lexington's coverage was primary rather than excess, and it denied Wal-Mart's motion on that same issue. In addition, the court denied Northland's motion for summary judgment, but it granted American Home's motion for summary judgment as to Northland's cross-claim that it was entitled to reimbursement from American Home. Thereafter, Northland filed a motion for reconsideration, which the trial court denied. This appeal followed.

In its sole enumeration of error, Northland contends that the trial court erred in granting American Home's motion for summary judgment as to Northland's cross-claim for reimbursement. Specifically, Northland argues that based on the language of the "Other

Insurance" provisions contained in their respective policies, Northland and American Home both provided excess coverage, as opposed to primary coverage, and therefore were obligated to contribute to the settlement of the underlying claims only on a pro-rata basis proportional to the limits of their respective policies in relation to the total of all available insurance. We agree.

"In this [S]tate, insurance contracts are governed by the rules of construction applicable to other contracts, and words in the policy must be given their usual and common signification and customary meaning." (Punctuation omitted.) *Turner v. Gateway Ins. Co.*[3] "When the language of an insurance policy defining the extent of the insurer's liability is unambiguous and capable of but one reasonable construction, the courts must expound the contract as made by the parties." (Punctuation omitted.) *Varsalona v. Auto-Owners Ins. Co.*[4] "The proper construction of a contract, and whether the contract is ambiguous, are questions of law for the court to decide." (Punctuation omitted.) *McGregor v. Columbia Nat. Ins. Co.*[5] See *Turner*, supra, 290 Ga. App. at 739; OCGA § 13-2-1.

Here, the "Other Insurance" provision (Section V., B., 5.) in Northland's policy provides: "This Coverage Form's Liability Coverage is excess over any other collectible insurance for any covered 'auto' *while hired or borrowed from you by another 'trucker.'* " (Emphasis supplied.) Given that Williams's tractor was leased to Pro-Carriers for the purpose of hauling Wal-Mart's trailer, under the plain and unambiguous language of Northland's policy, its insurance became "excess over any other collectible insurance." See *Southern Gen. Ins. Co. v. Alford*[6] ("[f]or a vehicle to constitute a hired automobile, there must be a separate contract by which the vehicle is leased or hired to the named insured for his exclusive use or control"). Because American Home's policy was also excess (a point neither party disputes), the two policies provided coverage on the same basis. Thus, based on the plain language of Section V., B., 5., f. of Northland's policy and Section IV., B., 5., d. of American Home's policy, both Northland and American Home were obligated to pay only their respective pro-rata shares toward the settlement of the underlying claims.

Nevertheless, American Home argues that it has not provided "any other collectible insurance" so as to trigger the pro-rata sharing of responsibility, as contemplated by the "Other Insurance"

[3] *Turner v. Gateway Ins. Co.*, 290 Ga. App. 737, 739 (660 SE2d 484) (2008).

[4] *Varsalona v. Auto-Owners Ins. Co.*, 281 Ga. App. 644, 646 (637 SE2d 64) (2006).

[5] *McGregor v. Columbia Nat. Ins. Co.*, 298 Ga. App. 491, 496 (2) (b) (680 SE2d 559) (2009).

[6] *Southern Gen. Ins. Co. v. Alford*, 234 Ga. App. 615, 617 (507 SE2d 179) (1998).

provisions in its own and Northland's policies, because it was only obligated to provide coverage toward the underlying settlement in this matter in the event that Wal-Mart's liability exceeded the $5,000,000 deductible. We disagree. The plain language of American Home's Deductible Coverage Endorsement provides: "This Endorsement applies solely between you [Wal-Mart] and us [American Home]." In addition, the Endorsement also provides that Wal-Mart must reimburse American Home "up to the Deductible Limit shown in the Schedule for any amounts we have so paid as damages, benefits or Medical Payments." Thus, despite the fact that Wal-Mart paid its share of the settlement directly, the policy clearly provided for American Home to pay on any claims covered by its policy from the first dollar and then seek reimbursement from Wal-Mart up to its deductible limit. Also, we are cognizant of the general rule in insurance law that "[a]ny applicable deductible is relevant between the insurer and the insured only, and does not apply to proration." 15 Couch on Insurance 3d, § 217.9. See *Air Liquide America Corp. v. Continental Cas. Co.*[7] (holding that a policy constituted "other collectible insurance," notwithstanding insured's obligation to fully reimburse insurer for any losses). Applying this principle, we find that the trial court erred in granting summary judgment to American Home as to Northland's cross-claim against American Home for reimbursement.

*Judgment reversed. Adams and Doyle, JJ., concur.*

### DECIDED DECEMBER 16, 2009.

*Dennis, Corry, Porter & Smith, Scott W. McMickle, Cash, Krugler & Fredericks, Kristen L. Beightol*, for appellant.

*Hawkins & Parnell, Frank C. Bedinger III, Brian W. Sprinkle, Weinberg, Wheeler, Hudgins, Gunn & Dial, John C. Bonnie, Joyce M. Mocek*, for appellees.

---

[7] *Air Liquide America Corp. v. Continental Cas. Co.*, 217 F3d 1272, 1279 (I) (B) (10th Cir. 2000).